GRAVES v. COMMISSIONERS.

(Filed April 12, 1904).

1. CONTRACTS—*Statutes—Bonds—Acts 1885, ch. 215—Const., Art. 2, sec. 14.*

Prior to November 1, 1886, it had not been decided that an act ratified by the presiding officers of the general assembly was conclusive evidence that the same had been passed in accordance with the constitution.

2. BONDS—*Railroad Securities—The Code, sec. 1996—Burden of Proof.*

Where the recitals in railroad bonds are that they were issued under a particular act of the legislature, the burden of validating them as made under sec. 1996 of The Code is on the party alleging their validity.

3. RAILROADS—*Bonds—County Commissioners—The Code, sec. 1996.*

The Code, sec. 1996, does not authorize the county commissioners to issue bonds in aid of the "construction" of a railroad not yet begun.

4. RAILROADS — *Bonds — Townships — County Commissioners — The Code, sec. 707, subsec. 14—The Code, sec. 1996.*

The county commissioners are not authorized to issue bonds on the credit of a township for the construction of a railroad.

5. BONDS—*Railroads—Taxation.*

A tax payer may enjoin county commissioners from making a tax levy to pay interest on railroad bonds issued under an unconstitutional statute, without restoring to the *bona fide* holders of the bonds the consideration paid therefor.

ACTION by G. C. Graves and others against the Board of Commissioners of MOORE County, heard by *Judge M. H. Justice,* at Chambers, in Carthage, November, 1903.

The Carthage Railroad Company was chartered by chapter 215, Laws of 1885. By section 7 of said act the Com-

135—4

missioners of Moore County, or any township through which said railroad might pass, were authorized to subscribe to its capital stock such an amount as, upon a vote at an election to be held as in said act provided, should be named. The said commissioners upon taking such vote were authorized to issue bonds for the purpose of borrowing money to pay such subscriptions as might be made pursuant to the provisions of said act. The commissioners were authorized to levy taxes to pay the interest on such bonds and to provide a sinking fund to pay the principal. The bill constituting said act was not passed, either in the Senate or House of Representatives, in accordance with the provisions of section 14, Art. II of the Constitution, in that the names of the senators and members voting for and against said bill were not recorded on the journals. The commissioners, in accordance with the provisions of said act, caused an election to be held in Carthage Township in said county in regard to subscribing $10,000 to said railroad, at which a majority of the qualified voters voted for said subscription. Pursuant thereto the commissioners issued the bonds of said township to the amount of $10,000. Said election was held between March 4, 1885, and November 1, 1886. The said bonds were in proper form and attested according to law. They were put upon the market, sold and purchased in good faith for their full value, and without any notice, express or implied, to the purchasers, of any infirmity therein except such facts as appeared upon the record on the journals of the Senate and House and of this the purchasers had no actual notice. The money derived from the sale of said bonds was spent in the construction and equipment of said railroad extending through said Carthage Township. The stock of said company to the amount of ten thousand dollars was issued to the Board of Commissioners for the benefit of Carthage Township, and is now held by said board for said

township, and the people of said township have enjoyed and continue to enjoy the benefit of said railroad. The defendant Board of Commissioners have each year since the issuance and sale of said bonds levied a tax upon the taxable property in Carthage township sufficient to pay the interest on said bonds and have paid such interest, and that it is the purpose of said board, at the meeting on the first Monday in June, to levy a tax upon the property and polls in said township for the purpose of paying the interest on said bonds accruing during the year 1903; they will levy said tax unless restrained, etc.

The bonds contain the following recital: "This bond is issued by virtue of an act of the General Assembly of North Carolina, ratified March 4, 1885, chapter 215, and by authority of an election held in Carthage Township in pursuance thereof, ratifying the same, etc."

The defendant board in apt time requested the Court to find from the affidavits the following facts: "That when the said bonds were issued and sold November 1, 1886, they were valid by the laws of North Carolina as then expounded by all the departments of the government and administered in its courts of justice. That said bonds were issued and sold prior to the decision in the case of *State v. Patterson,* 98 N. C., 660, and prior to the decision of said case every decision of the Supreme Court of said State had been in favor of the validity of said bonds and the act of the General Assembly under which they purport to be issued. That said bonds were sold for value and in good faith, and are now owned by the Jacob Tome Institute of Baltimore, not a party to this suit. That the validity of said bonds cannot be impaired by the decision of the Courts of the State made subsequent to the issue and sale of the bonds."

The Court declined to find said facts and to hold as requested, and the defendant excepted.

His Honor being of the opinion that chapter 215, Laws of 1887, had never been passed in accordance with the provisions of section 14, Article II of the Constitution, was invalid, and that the election held pursuant thereto and the bonds issued by authority thereof were void, enjoined the defendant Board of Commissioners from levying the tax to pay interest or principal of said bonds. The defendant appealed.

*H. F. Seawell* and *W. J. Adams,* for the plaintiffs.
*U. S. Spence,* for the defendant.

CONNOR, J.   The defendant concedes that his Honor's ruling in respect to the invalidity of chapter 215, Laws 1885, is sustained by the decisions of this Court in *Bank v. Comrs.,* 119 N. C., 214; *Comrs. v. Snuggs,* 121 N. C., 394, 39 L. R. A., 439; *Rodman v. Washington,* 122 N. C., 39; *Comrs. v. Payne,* 123 N. C., 432; but contends that said bonds are valid under the decisions of the Supreme Court of the United States in *Comrs. of Wilkes v. Coler,* 190 U. S., 107, and *Comrs. of Stanly v. Coler,* 190 U. S., 437. They say that prior to the passage of the Act of 1885, chapter 215, and the issuance and sale of the bonds, November 1, 1886, every decision of this Court construing the Constitution tended to establish the principle that when an act had been ratified and signed by the presiding officers of the Senate and House of Representatives, it was conclusive evidence that the bill had been passed in accordance with all of the provisions of the Constitution. That purchasers of bonds issued pursuant to such act are presumed to have contracted with reference to such decisions and that they entered into and became a part of the contract. That to hold the bonds issued in pursuance of such acts invalid, in the light of such decisions, impairs the obligation of the

contract, etc. If the premise be true the conclusion must be conceded. The principle is well settled by numerous authorities and commends itself to the judicial mind.

This identical question, however, is decided by the Supreme Court of the United States in *Wilkes Co. v. Coler,* 180 U. S., 506. The Circuit Court of Appeals, under the judiciary act of 1891, certified to the Supreme Court three questions, two of which were: (1) Whether, if the bonds and coupons in question were issued, put in circulation and came into the hands of purchasers for value and without notice in due course of trade, and if there were at that time no decisions of the Supreme Court of North Carolina adverse to these bonds, or bonds issued under similar statutes, they are valid, etc. (2) Whether there was any decision adverse to the validity of these or other identical bonds, or any construction of the Constitution or law of North Carolina which affected the question of their validity. *Mr. Justice Harlan,* for the Court, proceeds to examine the cases relied on by the bondholders to sustain their contention, being the same cases relied on by the defendant herein. *Broadnax v. Groom,* 64 N. C., 244; *Gatlin v. Tarboro,* 78 N. C., 119; *Scarborough v. Robinson,* 81 N. C., 409, all of which were decided prior to November 1, 1886. The learned Justice carefully analyses these cases and comes to the following conclusion: "It thus appears that no one of the cases cited by the defendant involved a construction of Article II, section 14, of the State Constitution. Those cases arose under other provisions of the Constitution." The question is so fully discussed, and the conclusion so clearly stated, that we think it unnecessary to do more than refer to the opinion in that case." This Court has since the decision of those cases kept the distinction between acts of ordinary legislation and acts coming within the provision of Article II, section 14, of the Constitution clearly in view.

*Bank v. Comrs.,* 119 N. C., 214; *Carr v. Coke,* 116 N. C., 223 28 L. R. A., 737, 47 Am. St. Rep., 801; *Wilson v. Markley,* 133 N. C., 616. The distinction was clearly defined in *Bank v. Comrs., supra.*

. 2. The defendant says that if the bonds are not valid under chapter 215, Laws of 1885, that the commissioners had power and authority to order the election, and pursuant thereto to issue the bonds under section 1996 *et seq.* of The Code, which provides that "The Boards of Commissioners of the several counties shall have power to subscribe stock to any railroad company or companies when necessary to aid in the completion of any railroad in which the citizens of the county may have an interest." This Court in *Comrs. v. Snuggs,* 121 N. C., 394, discussed and decided this identical question, holding that the extent of power conferred upon the commissioners by section 1996 of The Code was confined by the express language used *"to aid in the completion of any railroad, etc."* This view was reaffirmed in *Comrs. v. Call,* 123 N. C., 308, 44 L. R. A., 252. The defendant says this construction was repudiated by the Supreme Court of the United States in *Stanly Comrs. v. Coler,* 190 U. S., 437, and by the Circuit Court of Appeals in *Comrs. of Stanly Co. v. Coler,* 113 Fed. Rep., 705. It is true that these Courts held that while the general rule required the Federal Courts to accept the construction put upon State Constitutions and State statutes by the Courts of the State there were exceptions thereto, and that the case presented one of such exceptions; citing *Burgess v. Seligman,* 107 U. S., 20. The Federal Courts rejected the construction put by this Court upon the word "completion," holding that, read in the light of the context, it was to be construed as synonymous with *"construction."* We have examined with care the opinions of the learned Judges and the reasoning advanced to sustain their views. We are constrained, with all possible

deference, to say that we find in them no reason advanced which causes us to change the view expressed by this Court. We do not find it necessary to follow this discussion, because in our opinion section 1996 cannot, in any point of view, be called in aid of the bonds involved in this case. It will be observed that authority is given "Boards of the several counties" to subscribe, etc. The subscription here is made by Carthage Township, and certainly no power is given by The Code for townships to make such subscriptions otherwise than by a special act of the General Assembly. It is expressly provided that "No township shall have or exercise any corporate power whatsoever unless authorized by an act of the General Assembly to be exercised under the supervision of the Board of Commissioners." The Code, chapter 17, section 707, subsection 14. While it is true, as contended, that the County Commissioners as the governing board of the county by the terms of chapter 215, Laws of 1885, represents and directs the action of the township in respect to the subscription, etc., it will hardly be seriously contended that they may, under the terms of section 1996 of The Code, submit the question of issuing bonds to the people of the township except by positive direction of the General Assembly. These bonds expressly recite upon their face that they "are issued by virtue of an act of the General Assembly ratified on the fourth day of March, 1885 (chapter 215), and by authority of an election held in Carthage Township in pursuance thereof, ratifying the same, the purpose and intent of which is to raise a fund sufficient to pay the subscription of said Carthage Township to the capital stock of the Carthage Railroad Company for the construction and equipment of the same." It would be difficult to use stronger terms in which to set forth the subscription to the road and the purpose for which it was made; "for construction and equipment of the same" expressly excludes any idea

that the people of Carthage Township, or the commissioners
of the county, supposed that they were subscribing "to aid
in the completion" of a railroad.   We therefore conclude
that, even if we were to adopt the interpretation placed upon
the statute by the Supreme Court of the United States, which
we cannot do, these bonds would not come within the protec-
tion of section 1996 of The Code.   Again, much emphasis
is laid by *Mr. Justice McKenna* in the Stanly bond case
upon the fact that there the bonds expressly recited that
they were issued pursuant to the provisions of section 1996
*et seq.* of The Code.   Purchasers were justified therefore
in assuming that all provisions and conditions, the perform-
ance and existence of which are necessary to authorize the
issuing of the bonds, had been complied with and existed—
citing *School District v. Stone,* 100 U. S., 183, wherein it is
said that "When a statute confers power upon a municipal
corporation upon the performance of certain precedent con-
ditions to execute bonds in aid of the construction of a rail-
road,   *   *   *   and imposes upon certain officers invested
with power to determine whether such conditions have been
performed, recitals that the bonds are issued pursuant to or
by authority of the statute have been held in favor of a *bona
fide* purchaser for value to import full compliance with the
statute and to preclude inquiry as to whether the precedent
conditions had been performed before the bonds were issued."
This well-settled principle can have no application here
because there is not the slightest reference to The Code or
any statute other than chapter 215, Laws of 1885, as the
authority under which the bonds were issued.   If the power
was vested in the Commissioners of Moore County to submit
to the voters of Carthage Township the proposition to make
the subscription, and it was so recited in the bonds, such
recitals in the hands of *bona fide* purchasers for value would
be conclusive evidence that the conditions upon which the

authority to issue them could be exercised; but the recitals could not create or confer the power if there was an absolute want of it.    Every purchaser of the bonds would take them with notice of that fact.    *Wilkes v. Coler,* 190 U. S., 107. His Honor finds as a fact that the election was held under the provisions of the Act of 1885, chapter 215, and expressly declines to find that said election was held pursuant to the provisions of sections 1996, 1997.    There being no evidence in the record tending to show that the provisions of section 1997 in regard to ordering and holding the election were complied with, and no finding of fact to that effect, and no recitals in the bonds that they were issued pursuant to or by authority of said sections, it is difficult to perceive how we could say either that they were so issued, or if so issued that the provisions of the sections were complied with.    On the contrary we can see from the facts found and the recitals that the election was held pursuant to chapter 215 of the Laws of 1885.    Section 12 of said act prescribes the preliminary steps to be taken before an election can be held, that twenty-five tax payers petition in writing that an election be ordered, etc.    The recital in the bonds conclusively fixes the fact that such steps were taken and all things necessary were done in respect to the election.    *Stanly Bonds case, supra.* It is difficult to see how the same recitals can conclusively fix the fact that the bonds were issued pursuant to and in compliance with another statute, the terms and provisions of which, in regard to the preliminary steps to be taken, are entirely different.    The burden is upon the defendant to show that although void under the act recited in the face of the bonds they are valid under some other statute, and to show further that all things necessary to be done under such statute were done, which is practically to contradict the recitals.    We conclude that no power is conferred upon the commissioners by section 1996 of The Code to submit to

the people of a township the question of subscribing to a railroad. That in the absence of any such power his Honor correctly declined to find the fact that the commissioners undertook to order the election under said section. To have so found would have been error because there was no evidence thereof, on the contrary the record expressly showed the contrary. The defendant says that the plaintiff has no standing in a court of equity; that before he as a tax payer can invoke the equitable aid of the Court he must offer to restore to the holders of the bonds the proceeds or the property received in consideration thereof. It is well settled that a tax payer may maintain a bill to enjoin the collection of an illegal tax or a tax levied for an illegal purpose. If the bonds are absolutely void a tax levied to pay them would be equally so. No estoppel can grow out of a void act of the General Assembly or any act done by authority thereof. If the bondholders are so advised we can see no reason why they may not make themselves parties and assert their right to the stock now held by the commissioners in trust for the township. The plaintiff simply asks that a tax levy be enjoined. We pass upon the legal aspects of this record without regard to the moral element involved. Certainly this Court does not sympathize with repudiation of public obligations, but our duty is to construe the Constitution and laws of the State. Suitors must look to other tribunals, either their own consciences or the judgment of an enlightened public conscience, to find vindication for their actions. We deem it not improper to say that we commend the action of the defendant Board of Commissioners in defending the rights of the holders of the bonds and setting up in the strongest possible view the grounds upon which, if at all, the bonds could be sustained. The case was well argued and the briefs well and carefully prepared. The defendant contends that the injunction should not have been

made perpetual, but in any point of view only continued to the hearing. The order may be so modified, to the end that any other parties in interest may, if so advised, come in and litigate their rights. The judgment is

Modified and Affirmed.