BURLINGHAM et al. v. CITY OF NEW BERN et al.

(District Court, E. D. North Carolina. May 21, 1914.)

No. 39.

1. STATUTES (§ 21*)—ENACTMENT—CONSTITUTIONAL REQUIREMENTS.

Const. N. C., art. 2, § 14, providing that no law shall be passed to allow counties, cities, or towns to raise money on their credit, or pledge their faith, unless the bill shall have been read three several times in each house and passed three several readings on three different days, and unless the yeas and nays on the second and third readings shall have been entered on the journals, is mandatory; and, not having been complied with in the passage of Public Laws 1887, c. 198, and Laws 1889, c. 92, authorizing certain counties, townships, towns, or cities to subscribe for stock in a railroad company and issue bonds in payment therefor, bonds issued by a city pursuant thereto were void, though authorized at an election held under such statutes.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 18–27; Dec. Dig. § 21.*]

2. STATUTES (§ 285*)—ENACTMENT—EVIDENCE OF ENACTMENT.

Under Const. art. 2, § 14, requiring certain bills to pass three readings on three different days, and requiring the yeas and nays on the second and third readings to be entered on the journals, the journal must show who voted for the bill, and that the requisite number of Senators and members did so, and no other source of evidence can be invoked, and the certificate of the presiding officers that a bill has been read three several times does not obviate the necessity of examining the journal.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 17, 27, 384, 385; Dec. Dig. § 285.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. MUNICIPAL CORPORATIONS (§ 912*)—BONDS—POWER TO ISSUE—STATUTORY
   PROVISIONS.
   Code 1883, N. C., § 1996, and Revisal 1905, § 2558, authorizing counties
   to subscribe stock to any railroad company when necessary to aid in the
   completion or construction of any railroad in which the citizens of the
   county have an interest, does not authorize cities to issue bonds in pay-
   ment for stock in a railroad company.
   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§
   1902–1904; Dec. Dig. § 912.*]

4. MUNICIPAL CORPORATIONS (§ 949*)—BONDS—INVALIDITY—RIGHTS OF HOLD-
   ERS.
   Where bonds were issued by a city without authority of law, the levy
   and collection of a tax for the payment of interest and to provide a sink-
   ing fund was also without authority of law, and the holders of the bonds
   acquired no right to the amount collected.
   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§
   1991–1994; Dec. Dig. § 949.*]

In Equity. Bill by Charles C. Burlingham and others, trustees of
Thomas A. McIntyre and others, bankrupts, against the City of New
Bern and others. Heard on the pleadings and an agreed statement of
facts. Bill dismissed.

E. K. Bryan, of Wilmington, N. C., for complainants.
Guion & Guion, H. C. Whitehurst, and E. M. Green, all of New
Bern, N. C., for defendants.

CONNOR, District Judge. The facts agreed upon, material to the
decision of the controversy, are: The charter of the city of New Bern,
N. C. (chapter 42, Private Laws of 1879), conferred upon said city,
among specific powers not affecting the questions presented herein,
"the power to do any and all things granted to municipal corporations
under any general laws of the state of North Carolina." The Legis-
lature at its session of 1899 (chapter 30, Private Laws 1899) repealed
the charter of said city and, by chapter 82, Private Laws 1899, granted
a charter to said city, including the same territorial limits, granting the
usual powers conferred upon municipal corporations and "the power
to do any and all things not therein enumerated which were necessary
and proper to be done to effectively carry on a municipal government."
Said acts were duly and regularly passed by the General Assembly of
North Carolina in accordance with all the requirements of the Consti-
tution of the state, and especially in accordance with the provisions of
article 2, § 14, of said Constitution. Defendant D. M. Roberts is the
duly elected and qualified treasurer of said city of New Bern, with the
duties prescribed by said charter. Defendants named herein as such
are the duly elected and qualified board of aldermen of said city, with
the powers prescribed by the charter. The General Assembly of North
Carolina, at its session 1887, passed an act entitled, "An Act to incor-
porate the East Carolina Land and Railway Company," being chapter
198, Public Laws 1887. Said act conferred upon the counties of Jones
and Onslow power to subscribe to the capital stock of said company in
such amount as the commissioners of said counties should determine,

subject to the approval of a majority of all the qualified voters of said counties. The commissioners of said counties, upon the approval of the voters, were authorized to issue bonds bearing interest at the rate of 6 per cent., and to levy a tax upon the taxable property of said counties to meet the interest and provide a sinking fund to pay the principal of said bonds. By the provisions of said act, any town or township in said counties was authorized to subscribe for stock in said company in such amount as the commissioners of the county in which such town or township were situate should determine, upon application of at least five freeholders in the manner prescribed by said act, upon approval of the qualified voters of said town or township at an election to be held as prescribed by said act. The said East Carolina Land & Railway Company was duly organized pursuant to the provisions of said act.

At its session of 1889, the General Assembly of North Carolina passed an act amending the act of 1887 (chapter 92, Laws 1889), in which it was provided, among other things, that any of the other counties, townships, towns or cities, through which or near the said company's road is to be located, should, if they so desired, subscribe for stock in said company upon the application of not less than 25 freeholders and resident taxpayers of the county, and the approval of a majority of all the qualified voters in such county, township, town, or city, etc. After the organization of said company, it began the construction of its road, and continued the same from a point in Onslow county to the city of New Bern. While said company was engaged in constructing its road towards the city of New Bern, said city being desirous of subscribing for stock in said company and issuing bonds in payment thereof, some 25 or more freeholders and resident taxpayers petitioned the board of commissioners of Craven county, wherein said city is located, to submit the question of the subscribing for said stock to the amount of $50,000, to the qualified voters of said city as provided by said acts, and especially by sections 18, 19, 20, 21, and 22 of chapter 198 of the act of 1887, and the act amendatory thereof, to all of which reference is hereby made. By the terms of chapter 198 of the Laws of 1887 and chapter 92 of the Laws of 1889, the said city was authorized to subscribe for stock in said company and issue its bonds in payment thereof for the purpose of aiding in the construction of said road. Pursuant to the provisions of said acts, and in accordance with the petition of said freeholders and taxpayers, the board of commissioners of Craven county, at a regular meeting, on November 5, 1889, ordered an election to be held in said city on January 9, 1890, for the purpose of submitting to the qualified voters of said city the question of the subscription by said city of $50,000 of the capital stock of said company and the issuance of bonds in payment thereof and the levy of taxes to pay the interest and principal of said bonds. At said election a large majority of the voters cast ballots approving said subscription issuing bonds therefor, and levying the tax to pay the same and the interest thereon. The result of said election was duly canvassed and declared, and pursuant thereto the commissioners of Craven county, on behalf of said city of New Bern, subscribed for $50,000 of the capital stock

of said company, and received the proper certificates of stock therefor, and in payment therefor contracted the debt and incurred the obligation of said city. Thereafter the said company constructed its road, as allowed by said acts, through a portion of the said county of Craven and to the city of New Bern, and said road is now being operated. The duly constituted authorities of said city, pursuant to said acts and the said election, on January 2, 1893, issued 100 coupon bonds of said city of the denomination of $500 each, payable on January 1, 1953, and attached thereto 30 interest warrants or coupons at the rate of 5 per cent., payable on the 1st day of January of each year until the maturity of said bonds. Each of said bonds contained a recital that it was issued—

"In pursuance of a vote of the majority of the qualified voters of said city of New Bern at an election held in said city on the 2d day of January, 1890, by order of the board of county commissioners of Craven county in pursuance of an act of the General Assembly of North Carolina, entitled 'An act to incorporate the East Carolina Land and Railway Company,' ratified the 4th day of March, 1887, and the acts amendatory thereof."

Thos. A. McIntyre, prior to January 1, 1897, purchased for full value in the open market all of the said bonds, except those numbered from one to six, inclusive. The said city of New Bern and the board of commissioners of Craven county levied, assessed, and caused to be collected from the taxable property of the inhabitants of said city, as required by law, for the years 1894, 1895, and 1896, with which to pay the coupons maturing on said bonds on the 1st day of January for said years and a sinking fund to pay said bonds at maturity, which money, so collected, was paid over to the treasurer of said city for said purpose and no other, and from said money so collected he paid the coupons for said years, but has refused to pay the coupons maturing for the years 1897 and 1898, or to apply any of the money in the sinking fund to the payment of said bonds or the coupons. He has transferred the said amount received from the collection of said taxes to other departments of the city government, and used the same for city purposes. Defendants have refused to apply said money, or any part thereof, to the payment of said coupons or the principal of said bonds, alleging that same were not the legal or valid obligations of said city. Defendants have refused to levy or assess any other or further tax on the property of the inhabitants of said city for the purpose of meeting the payment of coupons maturing since January 1, 1896, or providing a sinking fund to pay said bonds when due, alleging that said bonds were not legal and valid obligations of said city, although demand has been made upon them in respect to both the coupons and the sinking fund. At the time said bonds were voted and issued the debt of said city, including the amount of said bonds for the construction of railroads, the support and maintenance, of internal improvements, or for any special purpose whatsoever, did not amount to 10 per cent. of the assessed valuation of the real and personal property situated in said city.

The amount of taxes collected to pay the coupons and to be placed in the sinking fund, as hereinbefore recited, and transferred under the direction of the proper officers of said city, to other departments there-

of for the use of said city, amounts to the sum of $5,249.37. There is now due on coupons, which have matured, $29,325. Prior to the filing of the bill herein, complainants presented to the proper officers of said city coupons overdue on said bonds, and demanded payment thereof, which was refused. Said city and its officers deny all liability therefor. The act of the General Assembly (chapter 198, Laws 1887) and the act amendatory, 1889, were passed by the General Assembly of North Carolina at its regular session of said years, but at the time of the passage of said acts, and each of them, the said General Assembly did not cause the said bills to be read on three different days in each house of said General Assembly, and the "yeas" and "nays" to be entered in the Journal of the said respective houses of the General Assembly on the second and third readings of the said acts (bills), as required by article 2, § 14, of the Constitution of North Carolina. T. A. McIntyre, the purchaser and owner of said bonds, was duly adjudged bankrupt by the District Court of the United States for the Southern District of New York, and plaintiffs were duly elected and qualified as the trustees of said McIntyre; all of said plaintiffs being residents and citizens of the state of New York. Plaintiffs attach appropriate prayers for judgment in accordance with the facts herein found, etc. Plaintiffs insist: First. That the bonds issued by the defendant city of New Bern are valid and legal obligations of said city: (a) By virtue of the power conferred upon said city of New Bern by its charter and other public statutes in force at the time said stock was subscribed and said bonds were issued; (b) by virtue of the act of 1887, chapter 198, and the act amendatory thereof, chapter 92, Laws 1889. Second. That said bonds are valid under the provisions of section 2558 of the Revisal of 1905, being section 1996, Code of 1883. Third. That, conceding said bond to be invalid, they are entitled to a decree commanding defendants to pay over to them the amounts collected from taxes levied for the specific purpose of paying same.

[1, 2] The Constitution of North Carolina, article, 2, § 14, ordains that:

"No law shall be passed to raise money on the credit of the state, or to pledge the faith of the state, * * * or allow the counties, cities or towns to do so, unless a bill for the purpose shall have been read three several times in each house of the General Assembly and passed three several readings, which readings shall have been on three different days, and agreed to by each house respectively, and unless the yeas and nays on the second and third readings of the bill shall have entered on the journal."

This constitutional limitation upon the power of municipal corporations to contract debts, and prescribing the essential legislative procedure in the enactment of laws for that purpose, has, by a long and uniform line of decisions by the Supreme Court of this state, been held "to be mandatory upon the General Assembly, and a condition precedent which must be performed in its entirety before the bill can become a law." Annotated Constitutions of North Carolina, Connor and Cheshire, 119, where all of the cases are collected. That no vote of approval of a proposition to subscribe for stock in a railroad company, by a municipal corporation pursuant to an act passed, authorizing an election

for that purpose in the enactment of which this legislative procedure has not been observed, is valid to create any obligation by reason of the issuance of bonds pursuant thereto is held in all of the cases which have been decided by the Supreme Court. So mandatory and essential to the creation of a valid municipal obligation, coming within the language of the Constitution, is this procedure that a consent judgment rendered in an action upon such obligation, is equally invalid. Bank v. Commissioners, 119 N. C. 214, 25 S. E. 966. The certificate of the presiding officers of the two houses that a bill has been read three several times in each house does not obviate the necessity of examining the Journal for the purpose of ascertaining whether the constitutional requirement has been complied with. The Journal must show who voted for the bill, and that the requisite number of Senators and members did so—no other source of evidence can be invoked. Commissioners v. Snuggs, 121 N. C. 394, 28 S. E. 539, 39 L. R. A. 439; Commissioners v. De Rosset, 129 N. C. 275, 40 S. E. 43; Wilson v. Markley, 133 N. C. 616, 45 S. E. 1023. In so far as effect is to be given by this court to the decisions of the Supreme Court of North Carolina upon this subject, the decision in Wilkes County v. Coler, 180 U. S. 506, 21 Sup. Ct. 458, 45 L. Ed. 642, is decisive.

[3] The plaintiffs insist that, however this may be, authority is to be found sustaining the validity of the bonds in the provisions of the charter of the city of New Bern and section 2558, Rev. 1905, being section 1996, Code 1883. Conceding that the charter (chapter 42, Private Laws 1879) and the amendments thereto, and that section 1996, Code 1883, were passed in compliance with the requirements of article 2, § 14, of the Constitution, the plaintiffs are confronted with several insurmountable obstacles. Section 1996 confers power upon counties "to subscribe stock to any railroad company or companies, when necessary to aid in the completion [Rev. 1905, "construction"] of any railroad in which the citizens of the county may have an interest." It has been held by the Supreme Court of North Carolina in Graves v. Commissioners, 135 N. C. 49, 47 S. E. 134, that this section does not authorize townships to issue bonds. For more convincing reasons it cannot be construed to authorize a city to do so. The Constitution and legislation of North Carolina makes and maintains a clear and essential distinction in respect to powers and functions between counties and townships, and towns and cities. Giving full force to all that is said in Stanly Co. v. Coler, 190 U. S. 437, 23 Sup. Ct. 811, 47 L. Ed. 1126, plaintiffs fail to derive any support to their contention from the decision in that case. Conceding that, if invalid under the act of March 4, 1887, pursuant to which they declare on their face they are issued, they may be sustained under other legislation, if within its terms and provisions, it is manifest that they cannot, for several reasons, be brought within the provisions of sections 2558 and 2559 of the Revisal. It would seem that every phase of this case was presented and decided adverse to plaintiffs in Graves v. Commissioners, supra.

[4] If the bonds were issued without authority of law, they are absolutely void, and no right, as against the city of New Bern, can accrue under them; no action taken by the authorities of the city in re-

gard to them confers any right upon the holders. The levy and collection of the tax was without authority of law and plaintiffs acquired no right to the amount collected. It was held by the city subject to the right of the taxpayer to demand repayment. It was no concern of the plaintiffs that the city authorities applied it to other purposes—no harm came to them by reason of the unlawful act of the city.

The bill will be dismissed at the cost of plaintiffs.