CLARK, C. J., concurring; STACY, J., dissenting; WALKER, J., concurs in dissenting opinion of STACY, J.
On 20 December, 1921, Mabel K. Bell made an affidavit before a justice of the peace of Vance County that the defendant, her divorced husband, had willfully abandoned and failed and refused to support his four children, of the age of four, six, eight, and eleven years, respectively; and thereupon she obtained a warrant under which the defendant was arrested and afterward bound to the Superior Court. At the March Term, 1922, the grand jury returned a true bill containing three counts charging the defendant (1) with the willful abandonment of his children without providing for them adequate support; (2) with the willful abandonment of his wife without providing *Page 703 
adequate support for her and the children; and (3) with willfully failing to provide adequate support for her and the children while he was living with his wife. The bill is endorsed "Abandonment of Children." At the same term the case was called for trial, and the State's witnesses were examined; the defendant declined to offer any evidence, and relied upon the statute of limitations. Following is a recapitulation of so much of the evidence as is necessary to an understanding of the controversy. At the March Term, 1921, Mabel Bell was granted a decree divorcing her from the defendant. On or about 1 June, 1919, the defendant, without just cause, abandoned her and the children without providing for them an adequate support, and afterward admitted that he had not taken care of the children, and would not care for them. The wife inherited an estate worth about $20,000, on which she had placed a $10,000 mortgage to secure two bonding companies who were prosecuting the defendant; a part of it she had spent for the children. At the time of the trial she was getting practically nothing from the estate, and her income was not sufficient for the support of the children. On 1 December, 1920, the defendant and his wife executed to R. S. McCoin a deed of trust on her real and personal property for the purpose of paying her debts and taxes, and collecting dividends, etc., and turning over to her a stated sum every month for the support of herself and the children.
In the fall of 1921 one of the children was sick in the hospital and the defendant told the trustee that he would do what he could for the children, and promised to send $200 and certain tax money claimed to be due him, but that he would not contribute to the support of his divorced wife. At the Christmas of 1920 the defendant gave the children a pony, and at the Christmas of 1921 he sent the oldest a book, the youngest a doll, and a basket to each of the others.
The defendant's motion for nonsuit was denied, and his Honor instructed the jury to return a verdict of guilty if they believed all the evidence, and were satisfied beyond a reasonable doubt that the defendant furnished the children with presents testified to and offered or agreed with the trustee to furnish means for supporting them, and after so doing and agreeing, if it was within two years, he willfully failed to furnish them adequate support. There was a general verdict of guilty, and thereupon his Honor adjudged that the defendant should pay into the court $50 a month for the support of his children. The defendant appealed.
The statutes making abandonment a misdemeanor were enacted in 1869. Public Laws 1868-69, ch. 209. The first section of the original act is now section 4447 of the Consolidated Statutes, the second is section 4450, and the third, section 4448. Section 4449 was enacted in 1917. The State contends that the defendant is guilty of a breach of the section first named above (4447), and concedes that if he is not, he should be discharged. The prosecution further admits that the defendant cannot be convicted if his guilt is legally dependent on his abandonment of his wife, because he abandoned her in June, 1919, more than two years before the warrant was issued or the bill of indictment was returned, and has not renewed as to her his marital obligation. Indeed, at the March Term, 1921, of the Superior Court, she obtained a decree dissolving the bonds of matrimony. The appeal, therefore, presents these two questions:
1. Is a former husband, from whom his wife (now living) has procured an absolute divorce, subject to prosecution under section 4447 for the subsequent abandonment of their children without providing such children an adequate support?
2. If so, is the prosecution barred by the statute of limitations?
With respect to the first interrogatory, the defendant's contention, concisely stated, is this: The statute (section 4447) contemplates the husband's abandonment of the wife without providing adequate support for her and their children, if any, and excludes the interpretation that the word "abandonment" applies equally to the children. In other words, the defendant contends that he is not guilty of a breach of this statute, even if it be granted that he willfully abandoned the children begotten of his wife without providing for their adequate support. There is, in our opinion, no sound reason for this limited construction. Since conditions growing out of the domestic relation exact of the wife the more immediate association, care, nurture, and tuition of the child, it has popularly been conceived that the abandonment of the wife involves the abandonment of the children. Doubtless the decisions are in part responsible for this conception — for in all the cases in which the husband was convicted of abandonment without providing support for the wife and the child they were ostensibly living together; and, in fact, he abandoned his child when he abandoned his wife. Not so here. The husband and the wife are divorced.
The jury returned a general verdict of guilty. It has repeatedly been held that where there are several counts in an indictment, and the evidence applies to one count only, a general verdict will be presumed to have been rendered on the count to which the evidence applies. S. v.Long, 52 N.C. 24; S. v. May, 132 N.C. 1021; S. v. Gregory, 153 N.C. 646;S. v. Strange, 183 N.C. 775. From his Honor's *Page 705 
instruction to the jury, and from the judgment, which makes provision for the children only, we may legitimately infer that the prosecution was confined to the count which charges the defendant with the willful abandonment of the children, or, at any rate, that his Honor concluded that the willful abandonment of the children without providing adequate support for them — regardless of the legal status of the wife — was a breach of the statute. The question first stated above, then, may be reduced to this: Does the first count in the indictment charge a criminal offense? The statute is as follows: "If any husband shall willfully abandon his wife without providing adequate support for such wife, and the children which he may have begotten upon her, he shall be guilty of a misdemeanor."
We have decided, in several cases in which the husband was indicted for abandonment and failure to provide support, that both these elements must be established, and we adhere to these precedents. But the former decisions of the Court do not determine the controversy, for the question in this appeal has not heretofore been presented for consideration. We must resort, therefore, to the established principles of statutory construction. Scrupulously observing the constitutional separation of the legislative and the supreme judicial powers of the government, we adhere to the fundamental principle that it is the duty of the Court, not to make the law, but to expound it, and to that end to ascertain and give effect to the intention of the Legislature, or if the legislative intent cannot be discovered, to give the statute such reasonable construction as may be consistent with the general principles of law. This is reasonable, for the courts impute to the Legislature, as a coordinate branch of the government, knowledge of the settled principles and maxims of statutory construction, and assume that statutes are enacted with a view to their interpretation according to such maxims and principles as an effective means of assuring certainty and uniformity in the administration of the law. In our endeavor to ascertain the purpose of the statute, we should also have due regard to the rule that the spirit and reason of the law shall prevail over its letter, especially where a literal construction would work an obvious injustice. Herring v.Dixon, 122 N.C. 425; Wilson v. Markley, 133 N.C. 616; Fortune v.Comrs., 140 N.C. 322; McLeod v. Comrs., 148 N.C. 79; 25 R.C.L., 955et seq.; 36 Cyc., 1102 et seq.
What, then, was the intention of the Legislature in enacting this statute? The obvious purpose was to punish the husband for a willful failure to perform certain duties enjoined by the marriage contract — the duty to live with and to provide support for his wife and their children. Accordingly, his willful abandonment of his children without providing for them adequate support is no less a misdemeanor than his *Page 706 
willful abandonment of his wife without providing adequate support for her. If there be no children, his willful desertion and neglect of his wife is punishable under the statute. S. v. Toney, 162 N.C. 635. If there be children and no wife — if she be dead or divorced — his willful abandonment of them without providing for their support is none the less criminal. This, we think, is the rational interpretation. It is in accord not only with the spirit and reason of the law, but with the phraseology and punctuation. Punctuation, we admit, is not an infallible standard of construction; indeed, some courts have held that it should be disregarded; but we apprehend that their conclusion was based upon the old English doctrine which was announced as a necessary consequence of the custom of enacting and enrolling laws with no punctuation whatever. But this is not the prevailing doctrine. In Taylor v. Town, 10 A. E. Anno. Cas., 1082, it is said: "There is no reason why punctuation, which is intended to and does assist in making clear and plain all things else in the English language, should be rejected in the case of the interpretation of statutes. Cessante ratione legis cessat ipsa lex."Ewing v. Burnet, 11 Pet. (U.S.), 41; Albright v. Payne, 43 Ohio St. 8;Savings Ins. v. Newark, 63 N.J. L., 547; Comrs. v. Ellwood, 193 Ill. 304;Tyrrell v. New York, 159 N.Y. 239. Regard should be given to the difference, which, no doubt, was intentional, between the punctuation in the first and the punctuation in the second section of the original act. Section 2 (C. S., 4450) was as follows: "That if any husband, while living with his wife, shall willfully neglect to provide adequate support for such wife and the child or children which he has begotten upon her, he shall be guilty of a misdemeanor." It is important to note the absence of a comma after the words "for such wife." In consequence, the section was deemed to denounce only one offense, namely, the willful neglect of the wife and the child. Section 1 (C. S., 4447) of the original act provides: "That if any husband shall willfully abandon his wife without providing adequate support for such wife, and the child and children which he has begotten upon her (such wife), he shall be deemed guilty of a misdemeanor." Note the comma after the words "wife" and "her." We regard it manifest that the first section of the original act (4447) was intended to create two offenses (willful abandonment of the wife and failure to support her, and willful abandonment of their children and failure to support them), and the second (4450) was subsequently amended and coordinated with the former by substituting "or" for "and," and thereby likewise creating two offenses. The Code, sec. 972. The words "while living with his wife" are significant chiefly as repelling the notion of a complete or partial severance of the marriage relation, and for the reason before stated, imply that the derelict *Page 707 
husband is living also with his children. So the two sections, construed together, are intended to punish the husband for willful failure to support the wife or children, if living with them, and for his willful abandonment of the wife or children and failure to provide adequate support.
The punctuation in section 4447 has been preserved in Battle's Revisal, in The Code, the Revisal of 1905, and in the Consolidated Statutes. If the phrase relating to the wife and children had not been set apart by commas as a separate and distinct provision, this section, like section two, might reasonably have been construed as creating one offense, and would have required an amendment similar to that of section two. It is hardly conceivable that the Legislature intended by the amendment to create two offenses in the second section if in the first there is only one — to subject the husband to prosecution if, while living with his wife, he willfully neglects to provide for their children, and to declare him exempt if he willfully abandons them and neglects to provide for their support. In our opinion, if the rule of strict construction be applied, the statute means just this: If any husband shall willfully abandon his wife without providing adequate support for such wife, he shall be guilty of a misdemeanor, and if he shall willfully abandon the children which he may have begotten upon her without providing adequate support for such children, he shall be guilty of a misdemeanor. This construction harmonizes the two statutes and credits the Legislature with the righteous intention of preserving, so far as practicable, the unity of the domestic relation.
True, the caption of the act of 1868-69 is "An act to protect married women from the willful abandonment or neglect of their husbands"; but to the suggestion that the caption may be invoked in explanation of the language of the statute, there is in this case more than one answer. In the first place, the language of the title is not permitted to control expressions in the body of a statute that conflict with it. Blue v.McDuffie, 44 N.C. 132; Randall v. R. R., 104 N.C. 413; S. c., 107 N.C. 750;S. v. Patterson, 134 N.C. 614. In the next place, if it be granted that the title of the original act should be considered, why is it not equally clear that the title of the reenacted statute should be considered? We readily admit that the compiler's preparation of a heading for a statute in no way affects the construction of the language "when its meaning is perfectly obvious." Cram v. Cram, 116 N.C. 293. But where in the course of half a century a statute has been reenacted time after time, and the first title is changed and the reenacted statute thereafter bears substantially the amended caption throughout, we are not at liberty to assume that such caption indicates merely the compiler's construction and excludes that of the Legislature. The first reenactment *Page 708 
was in 1874 (Battle's Rev., ch. 32, sec. 119, and ch. 121, sec. 1), under the title, "Husband guilty of a misdemeanor for abandoning family"; the second was in 1883 (The Code, vol. 1, ch. 25, sec. 790, and vol. 2, ch. 67, sec. 3866 et seq.), under the title, "Abandonment of wife and children by husband"; the third was in 1905 (Revisal of 1905, vol. 2, ch. 81, sec. 3355, and ch. 121, sec. 5463), under the title, "Abandonment of family by husband"; and the fourth, in 1919 (C. S., vol. 1, ch. 82, sec. 4447, and vol. 2, ch. 135, sec. 8107), under the title, "Abandonment of family by husband." If it be conceded that each of these titles was prepared by those who compiled the statutes and represented their personal interpretation, it is hardly reasonable to inhibit the conclusion that such interpretation has received the repeated approval of the Legislature. This deduction is fortified by the fact that the Legislature of 1917 seems to have approved it in authorizing the trial judge to provide for the support of the deserted wife or children, or both. C. S., 4449.
We are not disposed to adopt the argument that the offense is directed against the "husband" and not against the father. The husband and the father is one, and the word used in the statute is intended simply to identify the person — descriptio personae — and not to restrict its significance to the relation between the husband and the wife to the exclusion of that between the father and the child. The "husband," if there be children, sustains toward his family the dual relation of husband and father; he may be referred to as the one, but he is also the other. When the marriage relation is severed, whether by death or divorce, the husband is released from his previous obligation to his wife, but not from his obligation to his children. Here the decree dissolving the marriage contract left intact and unimpaired the defendant's legal obligation to maintain his children. If he was subject to prosecution before the divorce, the decree does not cover him with the mantle of immunity. Walker v. Crowder, 37 N.C. 487; Haglar v. McCombs,66 N.C. 351; Sanders v. Sanders, 167 N.C. 319; 19 C. J., 353 (813). Even after the death or the divorce of the wife the husband is usually referred to as the surviving husband or the divorced husband, just as the "husband of a daughter" includes the husband of a deceased daughter. Inre Ray's Estate, 35 N.Y.S.up., 481.
The next question is whether the prosecution is barred by the statute of limitations. More than two years elapsed between the abandonment in June, 1919, and the institution of the action in December, 1921. If there were nothing else in the record, we should be compelled to hold that the prosecution could not be maintained. C. S., 4512. But the evidence shows that within two years next preceding the commencement of the prosecution the defendant recognized as to his children the restored *Page 709 
relation, and voluntarily reassumed his obligation to maintain them (his civil liability was never suspended) by bestowing gifts, not of food or clothing, it is true, and by his promise to the trustee appointed by him and his wife (supported by the consideration of a legal duty) to provide for them a substantial amount of money. Thereafter, and within two years prior to the prosecution he again abandoned his children and withheld all support. In S. v. Hannon, 168 N.C. 215, the trial judge instructed the jury that a new promise to provide support would repel the bar of the statute and the instruction was sustained. In that case, besides making the promise, defendant paid his wife the sum of $5; and while this circumstance is referred to in the opinion, it is not referred to in the judge's instruction to the jury. However, in the present case the value of the defendant's gifts, regardless of his promise, far exceeded this amount. InS. v. Davis, 79 N.C. 604, the Court said: "The parties [husband and wife] were together treating as to what should be their future relations. The wife proposed a complete restoration of their marriage relations, which the husband declined, but he agreed to support her, and did support her for two weeks, when he refused to support her any longer. Being already separated, this refusal completed the second offense." The test of a legal restoration of the severed marital relation is not necessarily whether the delinquent husband and the abandoned child actually lived together after the abandonment, because the relation may be restored although they do not live in the same home. Here, as in the Davis case, supra, the father being still separated from his children, his refusal to support them after voluntarily reassuming the obligation that he had previously disowned, completes the second offense.
After a deliberate investigation of the record, we find no error. It is not our province to determine the culpable cause of the unfortunate separation of the wife and children from the husband and father. Ours should be the calm, judicial opinion, and our concern, the proper construction of the statute under consideration when tested by the approved canons of interpretation. With our conception of the purpose and intention of the Legislature, we cannot approve a construction of this statute which would make is possible for a man who is both husband and father willfully to abandon his wife, and after her death or divorce willfully to relinquish all concern for his children born of the marriage and commit them to the charity of the State without providing raiment for their comfort, food for their sustenance, training for their welfare, or shelter for their refuge and protection, and yet to retain immunity from guilt.
 No error. *Page 710