IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA17-557

 Filed: 16 October 2018

Durham County, Nos. 93 CVD 2822, 93 CVD 4477

COUNTY OF DURHAM, by and through DURHAM DSS, ex rel: SHARON L.
WILSON and TIFFANY A. KING, Plaintiff,

 v.

ROBERT BURNETTE, Defendant.

 Appeal by defendant from orders entered 23 November 2016 by Judge Fred

Battaglia in District Court, Durham County. Heard in the Court of Appeals 18

October 2017.

 Office of the County Attorney, by Senior Assistant County Attorney Geri Ruzage,
 for plaintiff-appellee.

 Mary McCullers Reece, for defendant-appellant.

 STROUD, Judge.

 Trial courts have a responsibility to enforce the law and to order relief or

punishment for willful disobedience of its orders. But courts are not just collection

agencies. Trial courts also have a responsibility to consider the basic subsistence

needs of an alleged contemnor before determining he has the ability to pay child

support as ordered and the ability to pay purge payments. Although the exact details

of basic subsistence needs will vary in different cases and the trial court has wide

discretion in determining these needs, basic subsistence needs normally will include
 CNTY. OF DURHAM V. BURNETTE

 Opinion of the Court

food, water, shelter, and clothing at the very least. The trial court must make

sufficient findings of fact to show that an alleged contemnor has the ability to pay his

child support obligation and purge payment for civil contempt after considering his

income, assets, and basic subsistence needs.

 Defendant appeals two orders1 entitled as “Order on Civil Contempt” based

upon his failure to pay child support and past public assistance arrears from

voluntary support agreements entered in 1993. Plaintiff presented no evidence other

than the amount of child support arrears or past public assistance owed. Defendant

presented substantial evidence of his inability to pay. Because the findings of fact in

the orders do not support the trial court’s determination that defendant willfully

refused to pay or that he had the ability to pay the purge payments for civil contempt,

and neither the evidence nor the findings of fact support the trial court’s finding that

defendant had the ability to satisfy the purge conditions, the trial court erred in

holding him in civil contempt. We therefore vacate both orders and remand for entry

of new orders.

 I. Background

 1 On 31 May 2017, defendant filed a motion to amend and supplement the record on appeal,
which was granted on 14 June 2017. The original record contains the Order on Civil Contempt entered
on behalf of Sharon Wilson, while the supplement contains the Order on Civil Contempt entered on
behalf of Tiffany King.

 -2-
 CNTY. OF DURHAM V. BURNETTE

 Opinion of the Court

 Defendant entered into a Voluntary Support Agreement and Order in File No.

93 CVD 4477 on 9 November 1993 for a child or children born to Tiffany King which

required him to pay child support of $97.00 per month and to repay past public

assistance of $5,600.00 at the rate of $13.00 per month.2 We will refer to this case as

the King matter. Defendant also entered into a Voluntary Support Agreement and

Order in File No. 93 CVD 2822 on 19 November 1993 for his two children born to

Sharon Wilson, which required him to pay child support of $203.00 per month

starting 1 December 1993 and to repay past public assistance of $2,436.00, to be paid

at the rate of $20.00 per month, for a total of $223.00 per month. We will refer to

this case as the Wilson matter. Over the years, it appears that defendant’s child

support obligations in both the Wilson and King matters may have been modified and

the amounts of past public assistance to be repaid increased, although he did pay

some of his obligations.3

 On 11 July 2016, plaintiff initiated contempt proceedings against defendant in

both cases under N.C. Gen. Stat. § 50-13.9(d). In the Wilson matter, an order to show

cause was issued based upon the most recent order of 26 May 2015, with total past

due child support of $23,186.69 and $2,136.07 due based on the terms of the last

order. In the King matter, an order to show cause was issued based upon the most

 2 Our record does not include the entire Voluntary Support Agreement but does include these
numbers which are not in dispute.
 3 Defendant’s entire payment history over the prior twenty-three years and modifications were

not in our record, but those details are not necessary for the issues presented on appeal.

 -3-
 CNTY. OF DURHAM V. BURNETTE

 Opinion of the Court

recent order of 26 May 2015, with total past due child support of $9,138.73 due based

on the terms of the last order. Both orders to show cause required defendant to

appear on 2 September 2016 to show cause why he should not be held in contempt

and to bring to the hearing “all records and information relating to your employment

and the amount and source of your disposable income.”

 On 2 September 2016, defendant appeared in court and applied for a court-

appointed attorney; the trial court entered an order continuing the hearing in the

Wilson case to 29 September 2016 for “PRETRIAL” and to 18 October 2016 for

“Hearing” and appointed counsel for defendant.4 The case was then continued and

the hearing began on 18 October 2016. After hearing a portion of defendant’s

testimony, the trial court sua sponte subpoenaed defendant’s sister to testify and set

the completion of the hearing for 15 November 2016. On 15 November 2016, the trial

court initially questioned defendant’s sister, and then defendant continued

presenting his evidence.

 The trial court held defendant in willful civil contempt for his failure to pay his

child support. On or about 23 November 2016, the trial court entered a two-page

“Order on Civil Contempt” in each case. The two orders are identical except for the

case captions, file numbers and amounts of arrears stated in Finding No. 4 of each

order; we quote Finding No. 4 below from both orders instead of repeating the rest of

 4 Our record does not include a similar order for the King case but based upon the later orders
and hearing transcript it appears the two cases were heard simultaneously.

 -4-
 CNTY. OF DURHAM V. BURNETTE

 Opinion of the Court

the order. The orders first find that defendant was in court and represented by

counsel and the custodial parent was not in court. All of the remaining findings of

fact are:

 3. The Defendant has willfully failed and refused to comply
 with the Order of this Court entered on 2/1/2009.

 4. The Defendant as of the date of his hearing is in arrears
 in the amount of $22,965.89. (Wilson case)

 4. The Defendant as of the date of his hearing is in arrears
 in the amount of $8959.53. (King case)

 5. The Defendant is presently able to comply with the
 Order or to take reasonable measures that would enable
 the Defendant to comply with the order and pay a purge of
 $2500.00 for the following reasons:

 a. The Defendant owns a boat.

 b. The Defendant owns a car.

 c. The Defendant spends money on gas.

 d. The Defendant spends money on food.

 e. The Defendant has medical issues, but they do not
 prevent him from working.

 f. The Defendant prepares and delivers food.

 g. The Defendant repairs cars for money.

 h. The Defendant pays car insurance in the amount of
 $147.00 per month.

 i. The Defendant receives in kind income from his sister
 and friends.

 -5-
 CNTY. OF DURHAM V. BURNETTE

 Opinion of the Court

 j. The Defendant has a cell phone.

 The trial court concluded defendant “should be found in direct Civil Contempt

per NCGS § 5A, Article 2.”5 The trial court ordered that defendant be immediately

taken into custody by the Durham County Sheriff and that he “shall remain in

custody for 90 days or until a purge of $2,500.00 is paid into the office of the Clerk of

Superior Court of this County.” In addition, the trial court ordered: “The Defendant

shall serve a 90 [day] sentence consecutive with any other child support contempt

orders in this Court.”6 Defendant timely filed notice of appeal from both orders. We

will address both orders together since they are identical except for the case captions,

file numbers, custodial parent, and findings of amount of arrearages.

 II. Analysis

A. Standard of Review

 We review orders for contempt to determine if the findings
 of fact support the conclusions of law: The standard of
 review we follow in a contempt proceeding is limited to
 determining whether there is competent evidence to
 support the findings of fact and whether the findings
 support the conclusions of law. Spears v. Spears, __ N.C.
 App. __, __, 784 S.E.2d 485, 494 (2016) (citation and
 quotation marks omitted); see also Watson v. Watson, 187

 5 North Carolina General Statutes Chapter 5A, Article 2 deals with Civil Contempt. Civil
contempt is neither “direct” nor “indirect.” See generally N.C. Gen. Stat. § 5A-21 (2017). North
Carolina General Statutes Chapter 5A, Article 1 deals with Criminal Contempt, which may be either
direct or indirect. See N.C. Gen. Stat. § 5A-13 (2017). The trial court specifically concluded defendant
was in civil contempt based on Article 2.
 6 Since two orders were entered on the same day with this same provision, defendant was

effectively sentenced to a fixed term of imprisonment of 180 days.

 -6-
 CNTY. OF DURHAM V. BURNETTE

 Opinion of the Court

 N.C. App. 55, 64, 652 S.E.2d 310, 317 (2007) (“The standard
 of review for contempt proceedings is limited to
 determining whether there is competent evidence to
 support the findings of fact and whether the findings
 support the conclusions of law. Findings of fact made by the
 judge in contempt proceedings are conclusive on appeal
 when supported by any competent evidence and are
 reviewable only for the purpose of passing upon their
 sufficiency to warrant the judgment. North Carolina’s
 appellate courts are deferential to the trial courts in
 reviewing their findings of fact.” (Citations and quotation
 marks omitted)).

County of Durham v. Hodges, __ N.C. App. __, __, 809 S.E.2d 317, 323 (2018).

B. The absence of evidence is not evidence.

 Defendant argues that the trial court failed to make sufficient findings of fact

to support a conclusion of law that defendant was in willful contempt and challenges

some findings as not supported by the evidence. Defendant contends neither the facts

as found by the trial court nor the evidence show he could pay a $5,000.00 purge

payment as ordered or that he could pay his monthly obligations.

 Plaintiff begins its argument by stating that defendant “was working at the

time of trial and therefore his medical issues may have . . . been restrictive but did

not prevent him from working.” Plaintiff does not direct us to any evidence which

would indicate that defendant was “working” at the time of trial, and the trial court’s

order did not make a finding he was “working.” Plaintiff does not directly respond to

defendant’s arguments but simply emphasizes that the trial court is the sole judge of

 -7-
 CNTY. OF DURHAM V. BURNETTE

 Opinion of the Court

the credibility of the evidence and the trial court apparently did not find defendant’s

evidence of his medical disability to be credible.

 This case is remarkably similar, both factually and legally, to Hodges, which

discussed the burden of proof for civil contempt and the required findings of fact:

 Proceedings for civil contempt can be initiated in three
 different ways: (1) by the order of a judicial official
 directing the alleged contemnor to appear at a specified
 reasonable time and show cause why he should not be held
 in civil contempt; (2) by the notice of a judicial official that
 the alleged contemnor will be held in contempt unless he
 appears at a specified reasonable time and shows cause
 why he should not be held in contempt; or (3) by motion of
 an aggrieved party giving notice to the alleged contemnor
 to appear before the court for a hearing on whether the
 alleged contemnor should be held in civil contempt. Under
 the first two methods for initiating a show cause
 proceeding, the burden of proof is on the alleged contemnor.
 However, when an aggrieved party rather than a judicial
 official initiates a proceeding for civil contempt, the burden
 of proof is on the aggrieved party, because there has not
 been a judicial finding of probable cause.

 In the present case, the trial court entered an order
 to show cause, which shifted the burden of proof to
 defendant to show cause as to why he should not be held in
 contempt of court. The party alleged to be delinquent has
 the burden of proving either that he lacked the means to
 pay or that his failure to pay was not willful.

 And despite the fact that the burden to show cause
 shifts to the defendant, our case law indicates that the trial
 court cannot hold a defendant in contempt unless the court
 first has sufficient evidence to support a factual finding
 that the defendant had the ability to pay, in addition to all
 other required findings to support contempt.

 -8-
 CNTY. OF DURHAM V. BURNETTE

 Opinion of the Court

Hodges, __ N.C. App. at __, 809 S.E.2d at 324 (citations and quotation marks omitted).

 Because of the order to show cause, defendant had the burden of production of

evidence to show he was unable to pay his child support as ordered. Id. at __, 809

S.E.2d at 324. Defendant presented substantial evidence regarding his medical

condition, his minimal living expenses, and his lack of income. Plaintiff presented no

evidence other than the amount of arrears owed, including any evidence regarding

defendant’s ability to work, income, potential income, or assets. “[D]espite the fact

that the burden to show cause shifts to the defendant, our case law indicates that the

trial court cannot hold a defendant in contempt unless the court first has sufficient

evidence to support a factual finding that the defendant had the ability to pay, in

addition to all other required findings to support contempt.” Id. at __, 809 S.E.2d at

324.

 Plaintiff is correct that the trial court is the sole judge of credibility and weight

of the evidence, and although the trial court could find defendant’s evidence not to be

credible, this does not create evidence for plaintiff. The absence of evidence is not

evidence. Defendant presented evidence, and even if the trial court determined not

one word of it to be true, we are then left with no evidence from plaintiff other than

the amount owed. Just as in Hodges, “defendant met his burden to show cause as to

why he should not be held in contempt, presenting evidence from [a] treating

physician[ ] that he is physically incapable of gainful employment. DSS presented no

 -9-
 CNTY. OF DURHAM V. BURNETTE

 Opinion of the Court

evidence and did not refute defendant’s evidence at all.” Id. at __, 809 S.E.2d at 324.

But even based upon Defendant’s evidence, it may be possible for the trial court to

have determined that Defendant had the ability to pay more than he actually paid.

 Defendant need not have the ability to pay his entire support obligation to be

held in civil contempt for failure to pay. If he had the ability to pay some of his

obligation, but he paid none, or less than he could have paid, he may still be held in

contempt. We addressed this type of situation in Spears:

 We agree with plaintiff that an interpretation of the cases
 which would always require a finding of full ability to pay
 would “encourage parties to completely shirk their court-
 ordered obligations if they lack the ability to fully comply
 with them.” Yet the cases do not go quite so far as plaintiff
 suggests. An obligor may be held in contempt for failure to
 pay less than he could have paid, even if not the entire
 obligation, but the trial court must find that he has the
 ability to fully comply with any purge conditions imposed
 upon him.

 The seminal case on this issue from our Supreme
 Court is Green v. Green, a civil contempt proceeding for
 nonpayment of alimony, in which the Court held that the
 trial court’s findings of fact were insufficient to support its
 order that the defendant be imprisoned until he paid the
 amounts owed in full:

 The judge who heard the proceedings in contempt recited
 the findings of fact made by the judge who granted the
 order allowing alimony, and added two others, in words as
 follows: “I further find that said defendant could have paid
 at least a portion of said money, as provided in said order,
 and that he has willfully and contemptuously failed to do
 so. I further find that he is a healthy and able-bodied man
 for his age, being now about fifty-nine years old.” So,

 - 10 -
 CNTY. OF DURHAM V. BURNETTE

 Opinion of the Court

notwithstanding the finding of the fact that the defendant
was able to pay only a part of the amount ordered to be
paid, he was to be committed to the common jail until he
should comply with the order making the allowance in the
nature of alimony, that is, until he should pay the whole
amount. Clearly, the judgment can not be supported on
that finding of fact.

Green v. Green, 130 N.C. 578, 578–79, 41 S.E. 784, 785
(1902).

 Although the Court in Green did not state this
explicitly, it seems that the defendant paid nothing toward
his alimony obligation and that the trial court found that
he could have paid “at least a portion” of the amounts owed.
Id., 41 S.E. at 785. Indeed, this sort of vague finding that
an obligor could have paid “more” could be made in almost
any case where the obligor has paid nothing at all, since
most obligors probably have the ability to pay $1.00 per
month, for example. Presumably, the defendant in Green
had the ability to pay some significant amount but less
than the full amount. The problem with the trial court’s
order in Green was that it went too far with the remedy --
despite a finding that the defendant had the ability to pay
only a portion of the sums owed, he was imprisoned “until
he should pay the whole amount.” Id. at 579, 41 S.E. at
785. In addition, we can also infer from this opinion that
the only source of the defendant’s funds was his labor and
that he was “healthy and able-bodied[,]” thus able to work
to earn funds to pay the plaintiff, although he could not
work while in jail. Id. at 578-79, 41 S.E. at 785. He
apparently did not have investments or other sources of
funds upon which to draw. See id., 41 S.E. at 785. Based
upon the trial court’s findings, the order showed that the
defendant had the ability to earn enough income to pay
only part of his alimony before he went to jail; while in jail,
he would have no ability to pay anything although he was
ordered to pay in full. Id., 41 S.E. at 785. For these
reasons, the Court found error. Id., 41 S.E. at 785.

 - 11 -
 CNTY. OF DURHAM V. BURNETTE

 Opinion of the Court

 Green has been followed for over 100 years in both
 alimony cases and child support cases. These cases are all
 very fact-specific.

Spears, 245 N.C. App. at 278-80, 784 S.E.2d at 497-98 (citations omitted). We will

therefore review the order to determine if the evidence supports the challenged

findings of fact and if the findings support the trial court’s conclusions of law.

C. Taking the inventory of financial condition

 In determining the ability to pay and willfulness of failure to pay child support,

the trial court must consider both sides of the equation: income or assets available to

pay and reasonable subsistence needs of the defendant. See, e.g., Bennett v. Bennett,

21 N.C. App. 390, 394, 204 S.E.2d 554, 556 (1974) (“Our Supreme Court has indicated

. . . that the court below should take an inventory of the property of the plaintiff; find

what are his assets and liabilities and his ability to pay and work -- an inventory of

his financial condition -- so that there will be convincing evidence that the failure to

pay is deliberate and willful.” (Citations and quotation marks omitted)).

 Defendant argues that the trial court did not make a “meaningful analysis of

[his] income and expenses” in its findings of fact. Defendant contends some findings

are not supported by the evidence and others “provided little or no information from

which the court could deduce that [defendant] was able to pay more” toward his child

support arrears.

 The trial court need not find detailed evidentiary
 facts but an order must have sufficient findings to support

 - 12 -
 CNTY. OF DURHAM V. BURNETTE

 Opinion of the Court

 its conclusions of law and decretal. There are two kinds of
 facts: Ultimate facts, and evidentiary facts. Ultimate facts
 are the final facts required to establish the plaintiff’s cause
 of action or the defendant’s defense; and evidentiary facts
 are those subsidiary facts required to prove the ultimate
 facts. While a trial court need not make findings as to all
 of the evidence, it must make the required ultimate
 findings, and there must be evidence to support such
 findings.

Hodges, __ N.C. App. at __, 809 S.E.2d at 323 (citations and quotation marks omitted).

We will therefore address defendant’s arguments about each of the trial court’s

findings of fact enumerated as its specific reasons for determining defendant had the

ability to pay or to take reasonable measures to enable him to pay.

 i. “The Defendant owns a boat.”

 Defendant does not challenge this finding as unsupported by the evidence. He

did own a boat. The trial court made no findings of the type, size, age, value, or

condition of the boat. Based on the evidence before the court, defendant received the

boat as a gift from a friend and it could be worth as much as $1,500.00. Defendant

agreed he would sell the boat. “Reasonable measures” to pay an outstanding

judgment could include “borrowing the money, selling defendant’s . . . property . . .,

or liquidating other assets, in order to pay the arrearage.” Teachey v. Teachey, 46

N.C. App. 332, 335, 264 S.E.2d 786, 787-88 (1980). Selling the boat is a reasonable

measure which would enable defendant to pay a portion of the purge payments, or

defendant could have sold the boat and used the proceeds to pay some of his

 - 13 -
 CNTY. OF DURHAM V. BURNETTE

 Opinion of the Court

outstanding obligation. At most, the finding and the evidence could show defendant’s

ability to pay the proceeds from the sale of the boat.

 ii. “The Defendant owns a car.”

 Defendant does not challenge this finding as unsupported by the evidence. He

did own a car. The trial court made no findings of the make, model, age, condition,

or value of the car. Based on the evidence before the court, it was a gift to defendant

from a friend and could be worth as much as $1,800.00. Defendant could sell the car,

although as defendant contends, then he would not have transportation to go to his

medical appointments or therapy, nor would he have transportation to get to a

workplace, if his medical restrictions are lifted. At most, this finding and the evidence

could show defendant’s ability to pay the proceeds from the sale of the car.

 iii. “The Defendant spends money on gas.”

 Defendant does not challenge this finding as unsupported by the evidence. He

did buy a little gas. The trial court made no findings about how much gas defendant

actually bought or where he got the money for it. Although the trial court need not

make findings on each evidentiary fact, this finding -- like the others -- is too minimal

to be meaningful. The evidence before the court was that defendant did not drive

very much due to the effects of his medication. When asked how he paid for gas, he

testified that he had “a little bitty thing with change in it.” He collected “pennies,

nickels, dimes, quarters” to pay for gas. He would go to friends occasionally to get “a

 - 14 -
 CNTY. OF DURHAM V. BURNETTE

 Opinion of the Court

little $20 here, $30 there.” This finding does not show defendant has any financial

ability to pay his monthly obligation or purge payments but only that he has a

minimal living expense to put gas in his car.

 iv. “The Defendant spends money on food.”

 Defendant does not challenge this finding as unsupported by the evidence. The

trial court made no findings about how much defendant spends on food. The evidence

before the court showed that defendant often relied on his sister or friends to help

with basic subsistence needs such as food.7 This finding does not show that defendant

has any financial ability to pay his support obligation but only that he has a minimal

living expense to buy food.

 v. “The Defendant has medical issues, but they do not prevent him from

 working.”

 First, even if this finding were supported by the evidence, it would not support

a determination of ability to pay and willful contempt. The finding does not say what

sort of work the defendant could do or how much that work may pay and there was

no evidence to support findings of these facts. In this sense, this finding about “work”

generally is similar to the findings in prior cases in which far more detailed findings

were held to be insufficient:

 The only findings of fact relating to plaintiff’s ability to pay
 include:

 7 We take judicial notice that people must have some food to eat or they will starve to death,
and they usually have to buy this food.

 - 15 -
 CNTY. OF DURHAM V. BURNETTE

 Opinion of the Court

 14. The Plaintiff is an able-bodied, 32 year old, who
 attended high school up to the tenth grade. He has no
 military background. His work experience includes
 running a Tenon machine in the furniture industry. The
 plaintiff has skills in the furniture industry, but prefers to
 work in landscaping or construction. The Plaintiff has
 worked odd-jobs for himself and for others. The Plaintiff
 has been paid in cash. The Plaintiff worked for 8 months
 last year as a brick mason for Jones Rock Mason, and
 earned $8.00 per hour and worked forty-hour weeks, with
 no overtime.
 ....
 16. The Court finds that the Plaintiff is like an ostrich,
 burying his head in the sand, in [that] he believes that if
 he does not see the minor child’s medical bills, that he will
 not have to pay them. The Plaintiff believes ignorance is
 bliss.

 ....

 18. While [the] Court does not disbelieve that the Plaintiff
 would prefer to work at an outside job, when a child is in
 the equation, the Plaintiff has to do what is necessary for
 the child.

Clark v. Gragg, 171 N.C. App. 120, 124, 614 S.E.2d 356, 359 (2005). These findings

addressed the defendant’s work experience, physical ability to work, and some actual

work he had done and his hourly pay, but this Court reversed the order, remanded

“for further findings of fact” and instructed the trial court to “make specific findings

addressing the willfulness of plaintiff’s non-compliance with the prior consent orders,

including findings regarding plaintiff’s ability to pay the amounts provided under

 - 16 -
 CNTY. OF DURHAM V. BURNETTE

 Opinion of the Court

those prior orders during the period that he was in default.” Id. at 126, 614 S.E.2d

at 360.

 We also noted in Clark that prior cases held similar findings to be insufficient

to show ability to pay and willfulness:

 Our appellate courts have previously held that almost
 identical findings are insufficient, standing alone, to
 support the finding of willfulness necessary to hold a party
 in civil contempt.

 In Mauney, 268 N.C. at 257-58, 150 S.E.2d at 394, our
 Supreme Court held that the following finding of fact was
 not a sufficient basis for the conclusion that the non-paying
 party’s conduct was willful in the absence of a finding that
 defendant had in fact been able to make the required
 payments during the period in which he was in arrearage:
 Judge Martin found that the defendant “is a healthy, able
 bodied man, 55 years old, presently employed in the leasing
 of golf carts and has been so employed for many months;
 that he owns and is the operator of a Thunderbird
 automobile; that he has not been in ill health or
 incapacitated since the date of [the] order [requiring
 payment of alimony] entered on the 5th day of October,
 1964; that the defendant has the ability to earn good wages
 in that he is a trained and able salesman, and is
 experienced in the restaurant business; and has been
 continuously employed since the 5th day of October, 1964;
 that since October 5, 1964, the defendant has not made any
 motion to modify or reduce the support payments.” Id. at
 255, 150 S.E.2d at 392. Likewise, in Hodges v. Hodges, 64
 N.C. App. 550, 553, 307 S.E.2d 575, 577 (1983), this Court
 reversed an order for civil contempt because [o]ur Supreme
 Court has held that a trial court’s findings that a defendant
 was healthy and able-bodied, had been and was presently
 employed, had not been in ill-health or incapacitated, and
 had the ability to earn good wages, without finding that
 defendant presently had the means to comply, do not

 - 17 -
 CNTY. OF DURHAM V. BURNETTE

 Opinion of the Court

 support confinement in jail for contempt. Id. See also Yow
 v. Yow, 243 N.C. 79, 84, 89 S.E.2d 867, 871-72 (1955)
 (setting aside civil contempt decree when the trial court
 found only that the defendant was employed as a manager
 of a grocery and did not specifically find that the defendant
 possessed the means to comply with the prior orders during
 the period that he was in default).

Clark, 171 N.C. App. at 124-26, 614 S.E.2d at 359-60.

 But defendant also challenges this finding of his ability to work as unsupported

by the evidence. The only evidence before the court regarding defendant’s medical

condition was his testimony, his sister’s testimony, and the letter from defendant’s

physician. The evidence showed that defendant was injured when he fell from a roof

while doing roofing work in 2013. Defendant testified that he had fallen “14 feet onto

a brick foundation” and “that messed me up pretty bad.” He kept trying to work after

the accident but in the “last three, four years” the doctor “said no more working.” He

testified that since the accident, he had been in pain and had to take “strong

medication” which “knocks me out” so he could not work while taking it. Without

objection from plaintiff, defendant entered into evidence a letter from Dr. Amir

Barzin, Director of Family Medicine Inpatient Service at UNC Healthcare. Dr.

Barzin wrote that he had been defendant’s primary care physician since October

2013. Dr. Barzin stated that he had been working with defendant to try to “control

issues that have been related to pain and injury” and that he was on work restrictions.

Defendant was being seen in UNC Healthcare’s “Physical Medicine and

 - 18 -
 CNTY. OF DURHAM V. BURNETTE

 Opinion of the Court

Rehabilitation Department” as well. Dr. Barzin reevaluated his work restrictions at

each visit and noted that “when he is able to work with limited pain the restriction

will be lifted.” Defendant also testified about a burn injury to his right arm and his

back “from half way down to my lower back.” Defendant is right-handed. He received

second and third degree burns in a grease fire in 2003 and his “forearm swells up.”

 Considering all of the findings of fact and the transcript of the trial, including

the trial court’s comments, it appears that this finding meant that defendant had the

ability to “work” only in the sense he was physically able to do some household tasks

such as laundry or cooking. For purposes of ability to pay child support, the ability

to “work” means more than the ability to perform some personal household tasks; it

means the present ability to maintain a wage-paying job. See generally Self v. Self,

55 N.C. App. 651, 653-54, 286 S.E.2d 579, 581 (1982) (“While the evidence establishes

that defendant was physically able to work, it does not establish that work was

available to him. . . . Absent evidence refuting testimony that failure to pay as

ordered was due to lack of financial means, the record does not support a finding that

the failure was willful.”). A defendant need not be completely incapacitated to be

considered as unable to “work.” See, e.g., Brandt v. Brandt, 92 N.C. App. 438, 444,

374 S.E.2d 663, 666 (1988) (“The trial court considered this evidence and concluded

that the plaintiff’s medical condition prevented her from undertaking any meaningful

employment and that she is unable to work and earn income to defray her own

 - 19 -
 CNTY. OF DURHAM V. BURNETTE

 Opinion of the Court

expenses. This conclusion is supported by the testimony of the plaintiff.”), aff’d per

curiam, 325 N.C. 429, 383 S.E.2d 656 (1989).

 In addition, the trial court’s comments indicate some potential

misapprehension of the law regarding the relevant time for defendant’s ability to

work. The defendant must be currently able to comply with the order to be held in

civil contempt, see, e.g., Teachey, 46 N.C. App. at 334, 264 S.E.2d at 787 (“For civil

contempt to be applicable, the defendant must be able to comply with the order or

take reasonable measures that would enable him to comply with the order. We hold

this means he must have the present ability to comply, or the present ability to take

reasonable measures that would enable him to comply, with the order.”); a defendant

may be held in criminal contempt as punishment for an act committed in the past,

when he had the ability to comply, even if he no longer has the ability, but not civil

contempt. See, e.g., O’Briant v. O’Briant, 313 N.C. 432, 434, 329 S.E.2d 370, 372

(1985) (“A major factor in determining whether contempt is civil or criminal is the

purpose for which the power is exercised. When the punishment is to preserve the

court’s authority and to punish disobedience of its orders, it is criminal contempt.

Where the purpose is to provide a remedy for an injured suitor and to coerce

compliance with an order, the contempt is civil.”). A person cannot be held in both

 - 20 -
 CNTY. OF DURHAM V. BURNETTE

 Opinion of the Court

civil and criminal contempt for the same conduct. See N.C. Gen. Stat. § 5A-21(c).

This is a crucial distinction.8

 Civil contempt and criminal contempt are distinguishable.
 It is essential to the due administration of justice in this
 field of the law that the fundamental distinction between a
 proceeding for contempt under G.S. 5-1 and a proceeding
 as for contempt under G.S. 5-8 be recognized and enforced.
 The importance of the distinction lies in differences in the
 procedure, the punishment, and the right of review
 established by law for the two proceedings.

 . . . Criminal contempt is a term applied where the
 judgment is in punishment of an act already accomplished,
 tending to interfere with the administration of justice.
 Civil contempt is a term applied where the proceeding is
 had to preserve and enforce the rights of private parties to
 suits and to compel obedience to orders and decrees made
 for the benefit of such parties. Resort to this proceeding is
 common to enforce orders in the equity jurisdiction of the
 court, orders for the payment of alimony, and in like
 matters.

 8 These comments are not the only reason we note the distinction between civil and criminal
contempt. The orders both found defendant in “direct civil contempt” and imposed fixed term of
imprisonment of 90 days for each case, to be served consecutively, for a total of 180 days imprisonment.
A fixed term of imprisonment is a proper sanction for criminal contempt, but not for civil contempt.
See N.C. Gen. Stat. § 5A-22(a) (2017) (“A person imprisoned for civil contempt must be released when
his civil contempt no longer continues.”). This fixed term of imprisonment was in addition to civil
contempt imprisonment which defendant could purge by paying $2,500.00 for each order. In other
words, defendant would remain in jail for at least 180 days (a criminal contempt sanction) even if he
immediately paid the $5,000.00 in purge payments (a civil contempt sanction). “A person who is found
in civil contempt under this Article shall not, for the same conduct, be found in criminal contempt
under Article 1 of this Chapter.” N.C. Gen. Stat. § 5A-21(c).

 - 21 -
 CNTY. OF DURHAM V. BURNETTE

 Opinion of the Court

Mauney v. Mauney, 268 N.C. 254, 256, 150 S.E.2d 391, 393 (1966) (citations,

quotation marks, and ellipses omitted).

 When defendant was testifying about his medical condition, the trial court

noted that defendant had previously been held in contempt in 2015 – after his 2013

fall from a roof -- so he must have had the ability to work in 20159:

 THE COURT: Well, ma’am, in 2015, he was held in
 contempt and had the ability to make the payments, so I
 guess why are we going back and revisiting that issue,
 since I don’t have any medical -- there’s no medical issue
 that he -- that’s preventing him from working, and that
 seems to me he was found in willful contempt in March --
 on May the 26th, 2015, by this Court. So if you could help
 me to understand why we’re re-addressing that issue.

 MS. WATKINS: Well, yes, Your Honor. I’m not sure it was
 entered into evidence at that time, however the injury
 continues and continues to prevent him from working.

Even if defendant was physically able to work at a wage-paying job in 2015, his

former ability to work would not mean he was still able to work at the time of the

hearing. Dr. Barzin’s letter was dated 10 October 2016. Dr. Barzin did not say when

defendant’s work restrictions began but did say that he currently could not work.

 Because the trial court determines the credibility and weight of the evidence,

it is possible the trial court may be able to make more specific findings regarding

 9 The “Commitment Order for Civil Contempt- Child Support,” on Form AOC-CV-603, Rev.
3/03, from 26 May 2015 is in our record on appeal. None of the boxes on the form are checked and it
has no findings of fact or conclusions of law. It simply orders defendant’s imprisonment for civil
contempt and sets a purge payment. It is nearly identical to the order entered in Hodges, __ N.C. App.
at __, 809 S.E.2d at 320.

 - 22 -
 CNTY. OF DURHAM V. BURNETTE

 Opinion of the Court

defendant’s actual ability to work as of the date of the hearing and earnings from his

work, so we must remand for additional findings as discussed by Clark, 171 N.C. App.

at 126, 614 S.E.2d at 360.

 vi. “The Defendant prepares and delivers food.”

 Defendant challenges this finding as unsupported by the evidence. It is not

clear what this finding means; certainly defendant did not operate a catering

business. The entirety of evidence about defendant’s preparation and delivery of food

was defendant’s sister’s testimony in response to the trial court’s question, “What can

you tell me about him?”

 Well, he’s a good person, he’s a kind-hearted person. He’ll
 do anything for anybody. In fact, I visit nursing homes,
 facilities, homes. I’m at work and I’ll call him ask him if
 he’d fix food for me, at times, to take it to nursing homes to
 different people, people that we know, people we do not
 know. He’s always been there when there are funerals or
 anything, I can call on him and he’ll cook for me.

There was not a scintilla of evidence that defendant was ever paid for any food nor

any evidence he ever worked in any sort of food service employment. Generally,

people do not charge a fee for food they have prepared for a family member or to take

to someone in a nursing home or to a funeral. Again, this finding does not

demonstrate defendant’s ability to work at a wage-paying job or his ability to pay

child support or the purge payments.

 vii. “The Defendant repairs cars for money.”

 - 23 -
 CNTY. OF DURHAM V. BURNETTE

 Opinion of the Court

 Defendant challenges this finding as unsupported by the evidence. Defendant

is correct there was no evidence he earned income from car repairs. The entire

evidence which could relate to car repair was his sister’s following testimony:

 Q. Do you know whether or not he sells vehicles like junk
 cars?

 A. He put -- He fix [sic] cars, and there are times I helped
 him. There are times, yes.

As defendant notes, the meaning of “fix” in this quote is uncertain, since there was

no evidence he repaired cars. The only evidence was that he sold junk cars. Junk

cars are, by definition, beyond repair. Defendant had earlier testified that some

friends had given him some junk cars which he then sold to generate funds to pay

toward his child support obligations. He testified:

 A. I’m just messing around with, you know, friends of mine
 that had cars and I will get those and sell them to the junk
 man. But about three or four months ago I did -- every
 little money I had I was sending it in. It was like maybe
 $30, but I sent it to Raleigh, and that’s what they told me
 last time for the last three or four months to sent one [sic]
 to Raleigh.

 Q. And how much are you getting when you’re selling these
 junk cars?

 A: I don’t get like maybe $100, $120 or whatever I get.

 Q. And how many have you sold in October?

 A. I think it was like two, three something like that.

 Q. So you received about two to three hundred dollars this

 - 24 -
 CNTY. OF DURHAM V. BURNETTE

 Opinion of the Court

 month.

 A. Yeah. And the money that I had I had to have the
 receipts for it, and I did send that in, the money order to
 Raleigh.

 To the extent that the trial court may have meant this finding to address the

type of “work” defendant may have the ability to perform, it is not sufficient to show

that he had the ability to pay. Whether defendant repaired a car or just sold a junk

car, the trial court’s finding does not indicate that defendant was paid, or could be

paid, for anything he did to a car. This finding does not show that defendant had the

ability to pay his monthly obligations or purge payments.

 viii. “The Defendant pays car insurance in the amount of $147.00 per

month.”

 Defendant challenges this finding as unsupported by the evidence because by

the time of the second hearing date, defendant had cancelled his car insurance. But

even if the trial court did not find defendant’s testimony he cancelled his insurance

to be credible, this finding indicates only that defendant had a basic living expense

required by law for him to continue to operate his car.

 ix. “The Defendant receives in kind income from his sister and friends.”

 Defendant challenges this finding as unsupported by the evidence but

acknowledges there was evidence that defendant’s sister and friends had assisted

defendant with paying essential bills such as utilities. But as defendant notes, there

 - 25 -
 CNTY. OF DURHAM V. BURNETTE

 Opinion of the Court

is no finding of the “circumstances, regularity, and the amount of ‘in kind’ income”

and “no context for determining whether those contributions enabled [defendant] to

eke [sic] out anything beyond his essential living expenses.” Defendant’s

characterization of the finding is accurate. The evidence showed only that some

friends had assisted defendant by giving him something, such as the junk cars to sell

or the boat or his car, and that his sister assisted him at times with paying bills in

varying amounts.

 This Court has discussed the type of financial support from others which may

be “in kind” income for purposes of establishing child support, see generally Spicer v.

Spicer, 168 N.C. App. 283, 288-89, 607 S.E.2d 678, 682-83 (2005), so this analysis is

helpful for determining ability to pay child support for purposes of contempt as well.

Generally, evidence must show the amount of the support and that it is given on a

regular basis:

 The Guidelines include as “income” any “maintenance
 received from persons other than the parties to the instant
 action.” Guidelines, 2005 Ann. R. N.C. 48. “Maintenance”
 is defined as “[f]inancial support given by one person to
 another. . . .” Black’s Law Dictionary 973 (8th ed.2004). As
 our appellate courts have previously recognized, cost-free
 housing is a form of financial support that may be
 considered in determining the proper amount of child
 support to be paid. See Guilford County ex rel. Easter v.
 Easter, 344 N.C. 166, 171, 473 S.E.2d 6, 9 (1996) (voluntary
 support by maternal grandparents, including cost-free
 housing, properly considered in determining child
 support); Gibson v. Gibson, 24 N.C. App. 520, 522-23, 211
 S.E.2d 522, 524 (1975) (evidence that employer supplied

 - 26 -
 CNTY. OF DURHAM V. BURNETTE

 Opinion of the Court

 father with automobile and rent-free apartment that
 reduced his living expenses was evidence of “additional
 income” from his job beyond his salary). See also 2 Suzanne
 Reynolds, Lee’s North Carolina Family Law § 10.8 at 533
 (5th ed. 1999) (included in income are “in-kind payments,
 such as a company car, free housing or reimbursed meals,
 if they are significant and reduce personal living
 expenses”). We therefore hold that the trial court did not
 err in including the $300.00 per month value of Mr. Spicer’s
 housing as income.

Spicer, 168 N.C. App. at 288-89, 607 S.E.2d at 682-83.

 None of the evidence here shows a regular or consistent amount or type of

assistance defendant has received from others and thus it cannot support a finding

of his ability to pay his ongoing obligation or purge payments.

 x. “The Defendant has a cell phone.”

 The defendant does not challenge this finding as unsupported by the evidence.

Once again, there is no finding of the cost of the cell phone, although the evidence

showed that defendant’s monthly bill was $42.00. Having a cell phone does not show

defendant’s ability to pay but instead is a basic living expense. Defendant notes this

finding illustrates the “trial court’s dogma that any living expense [defendant] paid

reflected a dereliction of his duty to pay off his child support.” Just as with the

findings that defendant pays for gas, food, and car insurance, this finding shows only

that defendant has a living expense but does not indicate an ability to pay.

D. Failure to consider living expenses

 - 27 -
 CNTY. OF DURHAM V. BURNETTE

 Opinion of the Court

 The central deficiency of the trial court’s order is the complete failure to

consider defendant’s living expenses. This is apparent even if we treated all of the

findings as correct. The trial court made no finding regarding the value of the

defendant’s car or boat but required him to sell these items. Defendant acknowledged

he should sell the boat, but without a car (with liability insurance required by law)

and some gas, defendant would have no transportation to get to doctor appointments

or to work, should he ever be released from his medical work restrictions.

 To determine the ability to pay, the trial court must “take an inventory of the

property of the [defendant]; find what are his assets and liabilities and his ability to

pay and work -- an inventory of his financial condition -- so that there will be

convincing evidence that the failure to pay is deliberate and willful.” Bennett, 21 N.C.

App. at 394, 204 S.E.2d at 556 (citations and quotation marks omitted). Only then

can the trial court determine if the defendant’s failure to pay is willful. Id. Based

upon the evidence, the trial court must do an inventory considering defendant’s

income, or ability to earn, if the trial court makes the required finding of fact to

impute income to defendant. See, e.g., Lasecki v. Lasecki, 246 N.C. App. 518, 523, 786

S.E.2d 286, 291 (2016) (“The trial court may impute income to a party only upon

finding that the party has deliberately depressed his income or deliberately acted in

disregard of his obligation to provide support[.]” (Citation and quotation marks

omitted)).

 - 28 -
 CNTY. OF DURHAM V. BURNETTE

 Opinion of the Court

 Our dissenting colleague takes the position that the expense side of the

financial inventory of a parent under obligation to pay child support can include only

food, water, clothing, and shelter as legitimate needs for subsistence, and all expenses

beyond this are unnecessary and unreasonable. This position is not supported by

prior precedent or the practical needs of a parent to allow the parent to have the

ability to work and support the child. The financial inventory must consider both

sides of the equation: the defendant’s income, assets, or ability to take reasonable

means to obtain funds to pay support minus the defendant’s legitimate reasonable

needs and expenses.10 The defendant has the ability to pay only to the extent that he

has funds or assets remaining after those expenses.

 The trial court has broad discretion to determine which expenses are

reasonable and necessary, but depending upon the facts of the particular case, those

expenses may include more than the basic subsistence needs of food, clothing, water,

and shelter. The extent of the legitimate needs of the obligor is in the discretion of

the trial court because in some cases, it would be to the child’s detriment to ignore

the obligor’s needs beyond food, water, clothing, and shelter. For example, an obligor

who lives and works in an urban area with reliable public transportation may not

 10 The trial court did not find that defendant was malingering, spending excessively, acting in
bad faith, suppressing his income, or hiding assets, and the trial court did not impute income to
defendant. See Ellis v. Ellis, 126 N.C. App. 362, 364, 485 S.E.2d 82, 83 (1997) (“It is clear, however,
that before the earnings capacity rule is imposed, it must be shown that the party’s actions which
reduced his income were not taken in good faith.” (quotations, brackets, and citation omitted)).

 - 29 -
 CNTY. OF DURHAM V. BURNETTE

 Opinion of the Court

need a car to get to work, to get to medical appointments, or to visit with or transport

a child – although he would still need funds to pay for the public transportation. But

an obligor who lives in an area without public transportation and has a job which

requires transportation normally must have a car or he will be unable to work. If he

loses his job, he will not be able to pay child support. Owning and operating a car

requires certain expenses, including liability insurance, gas, and maintenance such

as oil changes and new tires. This is why the trial judge has the discretion to

determine if an obligor needs a car and the reasonable expenses for the car.

 This opinion does not hold that liability insurance, gas, or a cell phone are

necessities for anyone, including defendant. But it is apparent from the trial court’s

order that it considered all of these items, along with food, as disposable assets

instead of living expenses. The trial court did not consider defendant’s legitimate

need for anything – even food, water, clothing, or shelter. On remand, the trial court

may determine that defendant has no legitimate need for a means of transportation

or communication, but the trial court must at least consider the possibility that these

expenses might be reasonable needs.

 Here, the evidence presented does not support a finding that defendant had

the ability to pay the purge payments ordered by the trial court. Defendant’s assets

were a car, worth at most $1,800.00, and a boat, worth roughly $1,500.00. The total

value is $3,300.00. If defendant sold both of his assets for his estimated value, he

 - 30 -
 CNTY. OF DURHAM V. BURNETTE

 Opinion of the Court

would still not have sufficient funds to pay the $5,000.00 purge. The trial court must

consider defendant’s financial condition, including reasonable expenses for

subsistence, as part of the determination of his ability to pay his regular obligation

as well as purge conditions. The trial court’s findings do not address how much

income defendant has, if any, or how much his subsistence expenses are. There was

some evidence that defendant had received some money from selling a few junk cars

which were given to him. He testified he made about $200.00 to $300.00 one month,

but the trial court must be able to make findings which demonstrate his ability both

to subsist and to pay his obligations, or some portion of the obligations if not the entire

amount. The trial court must also make findings of how much defendant has actually

paid, as there was evidence that he had made some payments, and compare this to

the amount he had the ability to pay. The order does not address defendant’s

payments at all.

 We also recognize there were two orders entered, and that the purge payment

in each order was $2,500.00. If defendant sold the car and the boat, he would have

enough to pay one purge payment. But the two orders were entered on the same date

as a result of the same hearing, both require the same purge payment, and the term

of imprisonment in each was consecutive to any other order. Practically speaking,

this means defendant would have to pay $5,000.00 to purge his contempt for both

orders. The trial court could not logically find that defendant was able to pay the

 - 31 -
 CNTY. OF DURHAM V. BURNETTE

 Opinion of the Court

purge payment in both orders, even if it could have found him able to pay in one of

the orders. After selling both the car and the boat and paying one purge payment,

defendant would have only a portion of the purge payment for the other order. Yet a

finding of ability to pay some portion of the purge payment is not sufficient. Even if

the defendant owns some property or has some income, the actual value of that

property or the amount of income must be sufficient to satisfy the purge conditions.

See Jones v. Jones, 62 N.C. App. 748, 749, 303 S.E.2d 583, 584 (1983) (“While the

evidence tends to show that defendant was gainfully employed as a construction

worker at an hourly wage of $5.75 and that he lives with his second wife who also is

gainfully employed with an average take-home pay of approximately $406.00 per

month and that the defendant and his wife reside in a trailer situated on some ‘land’

given to defendant by his present father-in-law and that the trailer is heavily

mortgaged and that monthly mortgage payments are $250.00 and that the mortgage

will be paid in six years and that defendant owns an automobile which is ‘broken,’

there is no evidence in this record that defendant actually possesses $6,540.00 or that

he has the present ability to take reasonable measures that would enable him to

comply, with the order. ” (Citation and quotation marks omitted)).

 III. Conclusion

 Because the existing evidence does not support the findings of fact, and the

findings of fact do not support the trial court’s conclusions that defendant had the

 - 32 -
 CNTY. OF DURHAM V. BURNETTE

 Opinion of the Court

ability to pay either his ongoing obligations or his purge payments in the Wilson and

King cases, we vacate both orders. We remand for entry of new orders including the

required findings of fact, including but not limited to the defendant’s reasonable

living expenses, and conclusions of law for contempt and his present ability to pay

the full amount of any purge payments ordered. The trial court may, in its discretion,

receive evidence on remand.11

 VACATED and REMANDED.

 Judge HUNTER concurs.

 Judge TYSON concurs in part and dissents in part.

 11 On remand, if the trial court holds defendant in civil contempt, new evidence will be
necessary to determine if defendant has the present ability to pay any purge payments ordered.

 - 33 -
No. COA17-557 – Durham v. Burnette

 TYSON, Judge, concurring in part and dissenting in part.

 The majority’s opinion vacates and remands the trial court’s orders. It asserts

no competent evidence in the record supports the trial court’s unchallenged findings

and conclusion that Defendant failed to meet his burden to show cause and he could

have paid at least some portion of his child support obligations, or that he can meet

his purge conditions. If so, we should remand for further findings of fact solely on

Defendant’s present ability to purge.

 I concur in part to remand for further findings on Defendant’s present ability

to purge his contempt, but respectfully dissent in part. Defendant has not met his

burden or shown any cause why he should not be held in willful contempt to vacate

the trial court’s order. Competent evidence in the record presented by the Defendant

himself supports the trial court’s unchallenged findings of fact that Defendant

repeatedly failed to pay his child support. Defendant does not deny he failed to pay

child support for his children and his own evidence shows he possessed funds and

hoarded assets above his basic necessities. Defendant’s actions prove he was willing

to and did deprive his children of their most basic needs, rather than discharge his

lawful, voluntarily agreed-upon, and minimal child support obligations when he

clearly had some means to do so.

 I. Duty to Support

 There is an ancient expectation and duty required of parents to support their

children. State v. Bell, 184 N.C. 701, 713, 115 S.E. 190, 196 (1922). “This duty is
 DURHAM V. BURNETTE

 Tyson, J., concurring in part and dissenting in part

recognized and discharged even by the higher orders of the animal world, and it would

seem to be prescribed as to the human father by the most elementary principles of

civilization as well as of law.” Id. (Emphasis omitted.) The Supreme Court of North

Carolina has also held: “A duty to support and maintain minor children is universally

recognized as resting upon the parents of such children . . . . This parental duty is

said to be a principle of natural law[.]” Wells v. Wells, 227 N.C. 614, 618, 44 S.E.2d

31, 34 (1947).

 The parents’ failure to provide support for their child creates both civil and

criminal liability for the parents. See N.C. Gen. Stat. § 49-2 (2017) (“Any parent who

willfully neglects or who refuses to provide adequate support and maintain his or her

child born out of wedlock shall be guilty of a Class 2 misdemeanor.”); see also N.C.

Gen. Stat. § 49-15 (2017) (“Upon and after the establishment of paternity pursuant

to G.S. 49-14 of a child born out of wedlock, the rights, duties, and obligations of the

mother and the father so established, with regard to support and custody of the child,

shall be the same, and may be determined and enforced in the same manner, as if the

child were the legitimate child of the father and mother.”).

 The case before us involves civil contempt. Under N.C. Gen. Stat. § 50-13.4(c1)

(2017), North Carolina’s stated public policy and “purpose of the [support] guidelines

and criteria shall be to ensure that payments ordered for the support of a minor child

are in such amount as to meet the reasonable needs of the child for health, education,

and maintenance[.]” Parents must meet the support needs of their children after

 2
 DURHAM V. BURNETTE

 Tyson, J., concurring in part and dissenting in part

their own “basic necessities,” food, clothing and shelter, are met. Once these minimal

or “basic necessities” for the parents’ self-subsistence are satisfied, all other funds

and assets of the parents are priority to and must be used to support their children,

under pain of contempt. See Bell, 184 N.C. at 713, 115 S.E. at 196.

 II. Contempt

 “An order for the periodic payments of child support or a child support

judgment that provides for periodic payments is enforceable by proceedings for civil

contempt.” N.C. Gen. Stat. § 50-13.4(f)(9) (2017). Once Defendant failed to make his

child support payments, proceedings for civil contempt are properly initiated “by the

order of a judicial official directing the alleged contemnor to appear at a specified

reasonable time and show cause why he should not be held in civil contempt[.]” Moss

v. Moss, 222 N.C. App. 75, 77, 730 S.E.2d 203, 204-05 (2012). Once the order directs

the “alleged contemnor to appear,” Defendant has the burden to “show cause why he

should not be held in civil contempt.” See id.

 “Failure to comply with an order of the court is civil contempt only when the

noncompliance is willful and ‘[t]he person to whom the order is directed is able to

comply with the order or is able to take reasonable measures that would enable the

person to comply with the order.’” Carter v. Hill, 186 N.C. App. 464, 466, 650 S.E.2d

843, 844 (2007) (quoting N.C. Gen. Stat. § 5A-21(a)(3)) (2005) (emphasis supplied)).

Under the unambiguous words in the statute and our precedents, Defendant’s

 3
 DURHAM V. BURNETTE

 Tyson, J., concurring in part and dissenting in part

willfulness in his breach and nonpayment of child support and his ability to purge his

contempt are separate and distinct issues. Id.

 The majority’s “balancing” analysis is more suited to the initial determination

of what Defendant could and should pay for child support, which is not the issue at

show cause. At the contempt hearing, Defendant acknowledged his past

accumulation and nonpayment of his child support obligations. The correct inquiry

on show cause is what Defendant could have paid, but did not pay, after he exempted

and satisfied his basic needs of subsistence.

 Any inquiry into the continued reasonableness of the agreed upon and

established support obligations is proper at a modification hearing, not a contempt

hearing. See Bogan v. Bogan, 134 N.C. App. 176, 179, 516 S.E.2d 641, 643 (1999) (a

trial court’s order allowing a partial payment of support obligation at a contempt

proceeding did not constitute a modification, because such modification is only

allowed “upon motion in the cause and a showing of changed circumstances by either

party.”) (citation omitted).

 Defendant’s past willfulness of nonpayment can be ascertained through “an

inventory of his financial condition” and findings by the trial court of his “assets and

liabilities and his ability to pay and work.” Bennett v. Bennett, 21 N.C. App. 390, 394,

204 S.E.2d 554, 556 (1974) (emphasis supplied) (citation omitted). Defendant’s ability

to purge his contempt must additionally satisfy the “present ability test,” which

 4
 DURHAM V. BURNETTE

 Tyson, J., concurring in part and dissenting in part

requires the defendant to “possess some amount of cash, or asset readily converted to

cash.” McMiller v. McMiller, 77 N.C. App. 808, 809, 336 S.E.2d 134, 135 (1985).

 In this case, Defendant expressly acknowledged his duty to support his

children. Defendant entered into two voluntary support agreements ordering him to

pay a little over $300.00 per month in total to support his children. Defendant

accumulated a repeating history of nonpayment and breaches of his support

agreement and obligations. At the time the most recent show cause hearing was held,

Defendant had accumulated and owed nearly $32,000.00 in past due and unpaid child

support.

 III. Burden at Hearing

 Defendant does not contest that he was properly served with the motion and

order to show cause. At the show cause hearing, Plaintiff presented evidence of the

amount of accumulated arrears Defendant owed. The burden then shifted and rested

upon Defendant to overcome the allegations of willful breach of his admitted

obligations and nonpayment, and to show any cause why he should not be held in

contempt. See Moss, 222 N.C. App. at 77, 730 S.E.2d at 204-05. Defendant appeared

with counsel and offered evidence of his income, expenses, and assets at the hearing.

 Defendant provided competent evidence of his income and expenditures,

including estimates on the values of his car and boat, his monthly income from gifts

and selling junk cars, and his living expenses, which included payments he had made

 5
 DURHAM V. BURNETTE

 Tyson, J., concurring in part and dissenting in part

for gas, automobile liability insurance, and a cell phone in addition to expenses for

food, clothing, and shelter.

 The majority’s opinion correctly states: “An obligor may be held in contempt

for failure to pay less than he could have paid, even if not the entire obligation, but

the trial court must find that he has the ability to fully comply with any purge

conditions imposed upon him.” Spears v. Spears, 245 N.C. App. 260, 278, 784 S.E.2d

485, 497 (2016).

 The majority’s opinion also correctly states the trial court’s unchallenged

findings of fact are based upon competent evidence:

 i. “The Defendant owns a boat.” Defendant does not
 challenge this finding as unsupported by the evidence. He
 did own a boat. . . .

 ii. “The Defendant owns a car.” Defendant does not
 challenge this finding as unsupported by the evidence. He
 did own a car. . . .

 iii. “The Defendant spends money on gas.” Defendant does
 not challenge this finding as unsupported by the evidence.
 He did buy a little gas. . . .

 ....

 viii. “The Defendant pays car insurance in the amount of
 $147.00 per month.” Defendant challenges this finding as
 unsupported by the evidence because by the time of the
 second hearing date, defendant had cancelled his car
 insurance. . . .

 ....

 x. “The Defendant has a cell phone.” The defendant does

 6
 DURHAM V. BURNETTE

 Tyson, J., concurring in part and dissenting in part

 not challenge this finding as unsupported by the evidence.

 None of these items are “basic necessities” for self-sustenance to excuse

Defendant from breach of his priority obligations to support his children. It is not the

role of this appellate court to re-weigh the competent evidence on these unchallenged

and binding findings of fact, which support the trial court’s conclusion.

 IV. Standard of Review

 The majority’s opinion correctly states: “Findings of fact made by the judge in

contempt proceedings are conclusive on appeal when supported by any competent

evidence and are reviewable only for the purpose of passing upon their sufficiency to

warrant the judgment. North Carolina’s appellate courts are deferential to the trial

courts in reviewing their findings of fact.” County of Durham v. Hodges, __ N.C. App.

__, __, 809 S.E.2d 317, 323 (2018). That standard of review is misapplied by re-

weighing the evidence on appeal.

 The record and transcript contain competent evidence to support the trial

court’s finding Defendant possessed money and assets above his “basic necessities,”

had been and was able to help meet a portion of his support obligations, and had

failed to support his children. This evidence supports the trial court’s conclusion that

Defendant’s failure was, and his continued failure to pay his child support obligations

is, willful. See Hill, 186 N.C. App. at 466, 650 S.E.2d at 888.

 Precedents require us on appellate review to defer to the trial court’s findings

and conclusion in contempt hearings. Our review of “contempt proceedings is limited

 7
 DURHAM V. BURNETTE

 Tyson, J., concurring in part and dissenting in part

to determining whether there is competent evidence to support the findings of fact

and whether the findings support the conclusions of law.” Watson v. Watson, 187 N.C.

App. 55, 64, 652 S.E.2d 310, 317 (2007) (citation omitted). “Findings of fact made by

the judge in contempt proceedings are conclusive on appeal when supported by any

competent evidence and are reviewable only for the purpose of passing upon their

sufficiency to warrant the judgment.” Hartsell v. Hartsell, 99 N.C. App. 380, 385, 393

S.E.2d 570, 573 (1990) (emphasis supplied) (citation omitted)). “[T]he court is not

limited to ordering one method of payment to the exclusion of the others provided in

the statute. The Legislature’s use of the disjunctive and the phrase ‘as the court may

order’ clearly shows that the [trial] court is to have broad discretion in providing [and

ordering] for payment of child support orders.” Moore v. Moore, 35 N.C. App. 748, 751,

242 S.E.2d 642, 644 (1978).

 If, as the majority’s opinion asserts, despite the established and unchallenged

nonpayment and the competent evidence provided by Defendant, the findings of fact

by the trial court are insufficient to support a conclusion Defendant has the present

ability to purge, it is not necessary to vacate the entire order. Defendant still has

failed to meet his burden at the show cause hearing why he should not be held in

willful contempt for his past and admitted failures to pay child support and the

$32,000.00 of accumulated debt under his voluntary agreement and the trial court’s

order. Spears, 245 N.C. App. at 278, 784 S.E.2d at 497.

 8
 DURHAM V. BURNETTE

 Tyson, J., concurring in part and dissenting in part

 If the trial court’s findings do not support the conclusion that Defendant has

the present ability to purge his willful contempt, upon remand for further findings of

fact Defendant must show the amounts he can pay to purge his contempt or seek

reduction of the purge conditions.

 Defendant is not entitled to the findings and conclusions of his past breaches

of his agreed-upon and very modest support obligations to his children being vacated.

The competent evidence and unchallenged findings clearly show Defendant had

money and hoarded assets well above his basic living necessities, and willfully spent

money admittedly owed to the children on a cell phone, boat, car, gas, and insurance,

instead of meeting his agreed-upon and lawful support obligations to his children.

 While the trial court, sua sponte, did set purge conditions that are higher than

DSS had initially sought, Defendant’s own evidence shows he had additional means

and capacity to pay beyond what he did pay and what DSS initially sought for him to

purge. See Shippen v. Shippen, 204 N.C. App. 188, 190, 693 S.E.2d 240, 243 (2010)

(“a failure to pay may be willful within the meaning of the contempt statutes where

a supporting spouse is unable to pay because he or she voluntarily takes on additional

financial obligations or divests him or herself of assets or income after entry of the

support order.” (citation omitted)).

 A finding indicating Defendant’s failure to pay is willful and that he has the

ability to comply “while not as specific or detailed as might be preferred, is minimally

 9
 DURHAM V. BURNETTE

 Tyson, J., concurring in part and dissenting in part

sufficient.” Id. at 191, 693 S.E.2d at 244. The evidence, findings, and order before us

clearly meets and exceeds that standard.

 At most on remand, Defendant can attempt to meet his purge and/or can argue

for a reduction of the purge amount or conditions. Tyll v. Berry, 234 N.C. App. 96,

112, 758 S.E.2d 411, 422 (2014) (“The trial court, therefore, erred in requiring the

monetary payments without first finding defendant was presently able to comply

with the $2,500.00 fine imposed as a result of defendant’s past contempt”).

 V. Conclusion

 The issue in this case is whether Defendant’s past failures to pay his support

obligations were willful, not the reasonableness of the support obligation. Defendant

voluntarily agreed to meet his most basic and legal obligations to support for his

children and does not challenge that he willfully failed to do so. Defendant’s own

evidence shows he possessed funds and property above his basic necessities, failed to

pay his child support, spent his money and time on other things, hoarded assets

available to discharge his obligations, and breached and ignored his “universally

recognized” duty to support his children. See Wells, 227 N.C. at 618, 44 S.E.2d at 34.

Defendant has failed to meet his burden to “show cause why he should not be held in

civil contempt[.]” Moss, 222 N.C. App. at 77, 730 S.E.2d at 204-05.

 Under our standard of review, and Defendant’s admitted breaches, it is

unnecessary and a waste of judicial resources to vacate the trial court’s unchallenged

findings and conclusions on Defendant’s willfulness. Such evidence and unchallenged

 10
 DURHAM V. BURNETTE

 Tyson, J., concurring in part and dissenting in part

findings show the Defendant’s actions were volitional and his failure to support was

willful. The trial court’s unchallenged findings and conclusions that Defendant failed

to pay his child support and has failed to meet his burden to show cause why he

should not be held in willful contempt is properly affirmed. Presuming the purge

amount may exceed the Defendant’s admitted present abilities, remand is

appropriate for supplemental findings on Defendant’s present ability to purge or for

him to seek reduction thereof. I respectfully concur in part and dissent in part.

 11